USCA1 Opinion

 

 December 16, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1475 UNITED STATES OF AMERICA, Appellee, v. CLIFFORD A. DOYLE, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ _________________________ Before Breyer, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _________________________ Kent I. Patashnick, with whom Patashnick Law Offices was on ___________________ ______________________ brief, for appellant. F. Mark Terison, Assistant United States Attorney, with whom _______________ Richard S. Cohen, United States Attorney, was on brief, for the ________________ United States. _________________________ _________________________ SELYA, Circuit Judge. This appeal requires that we SELYA, Circuit Judge. _____________ ponder the denial of appellant's motion to withdraw his guilty plea to certain federal drug and tax offenses. Because a weighing of the relevant factors virtually compels the result reached below, we affirm. I. BACKGROUND I. BACKGROUND On July 12, 1991, defendant-appellant Clifford A. Doyle agreed to plead guilty to certain narcotics and income tax offenses. See 21 U.S.C. 841(a)(1), 841(b)(1)(B) (1988); 26 ___ U.S.C. 7201, 7206(1) (1988). In the written plea agreement, appellant promised to cooperate with the government in exchange for the assurance that the prosecutor would herald appellant's assistance. According to its terms the bargain contained "no further or other agreements, either express or implied." On September 9, 1991, the district judge conducted a hearing under the aegis of Fed. R. Crim. P. 11, ascertained a fac-tual basis for the plea, and elicited Doyle's understanding of the charges against him, the maximum sentence he faced, the rights he relinquished, and like matters.1 Upon determining Doyle's tender to be knowing and voluntary, the court accepted the guilty plea. At the hearing's end, the government filed a motion to seal all records in the case. No objection appearing, the motion was granted. But, as Homer had prophesied many centuries before, ____________________ 1During the Rule 11 colloquy, appellant again assured the court that no promises apart from those specified in the written agreement had influenced his change of plea. 2 there was room for a slip 'twixt the cup and the lip. The clerk of court neglected properly to record and implement the sealing order. Two days later, the press learned of Doyle's plea and a spate of publicity ensued. Sentencing proved an unusually protracted affair. The initial sentencing hearing began on February 7, 1992. It ended when the district judge granted appellant time to respond to evidence of attempted flight. At adjournment, the prosecutor called the judge's attention to the clerk's bevue, reporting that only the plea agreement itself had been impounded and that, as a result, publicity about the case's status had jeopardized the identity of a confidential informant. Although the toothpaste was out of the tube, the prosecution nevertheless renewed the motion to seal. The court again granted the motion. Appellant stood mute. The proceedings resumed nearly two months later (April 2, 1992). The judge apprised Doyle's counsel of his inclination to mete out consecutive prison sentences totalling fourteen years and one month. Eventually, however, the judge recessed the hearing without actually imposing sentence so that a question concerning the possibility of parole could be clarified. The third sentencing hearing took place on April 6. The judge settled the parole issue at a chambers conference, informing the lawyers that "any sentence I hand down will be with the contemplation that [Doyle] may end up having to serve that entire [sentence]." Appellant's counsel inquired whether the 3 judge's thinking anent length of sentence had modulated, but the judge declined comment. When the proceedings shifted into open court, appellant moved to withdraw his guilty plea. He argued that the media attention surrounding the case had endangered his life and stymied complete cooperation, thereby depriving him of the full benefit of the bargain commemorated in his plea agreement.2 The district court determined, in substance, that the request to retract derived from appellant's displeasure with the forecasted sentence rather than from any legally cognizable reason and, therefore, denied the motion. Following imposition of sentence, Doyle appealed. II. ANALYSIS II. ANALYSIS We start with an overview of the legal landscape and then proceed to survey the precise terrain on which this appeal is constructed. A A A defendant may withdraw a guilty plea prior to sentencing only upon showing a fair and just reason for the request. See United States v. Pellerito, 878 F.2d 1535, 1537 ___ _____________ _________ (1st Cir. 1989); see also Fed. R. Crim. P. 32(d). Several ___ ____ factors enter the trial court's decisional calculus. They include the force of defendant's proffered reason; the timing of ____________________ 2While appellant's motion offered other reasons for withdrawing his plea, he argues none of them on appeal. We deem those arguments waived. See United States v. Dietz, 950 F.2d 50, ___ _____________ _____ 55 (1st Cir. 1991); United States v. Rivera-Martinez, 931 F.2d _____________ _______________ 148, 150 n.3 (1st Cir.), cert. denied, 112 S. Ct. 184 (1991). _____ ______ 4 the request; the defendant's assertion of legal innocence (or the lack of such an assertion); and the likely voluntariness of the plea, given the newly emergent circumstances. See Pellerito, 878 ___ _________ F.2d at 1537; United States v. Kobrosky, 711 F.2d 449, 455 (1st ______________ ________ Cir. 1983). If the combined weight of these factors tilts in the defendant's favor, then the court must also assess the quantum of prejudice, if any, that will inure to the government. See ___ Pellerito, 878 at 1537. The nisi prius court has a special _________ vantage point from which it may evaluate these factors. Hence, its decision about whether it is fair and just to extricate a particular defendant from his plea will be overruled only for abuse of discretion. See id. at 1538; Kobrosky, 711 F.2d at 454. ___ ___ ________ B B Having limned the salient factors in the decisional calculus, we examine the lower court's findings on each. 1. The Proffered Reason. A defendant may not renounce ____________________ his guilty plea without advancing a plausible reason for so doing. See United States v. Tilley, 964 F.2d 66, 72-73 (1st Cir. ___ _____________ ______ 1992); Pellerito, 878 F.2d at 1538. Appellant claims that his _________ plea rested on the mistaken understanding that all possible fruits deriving from full cooperation would be his. Because media intensity dictated the tone of his cooperation, he maintains that the government breached an implicit promise to safeguard his opportunity to cooperate fully and, thus, precluded him from reaping the perceived benefits of his bargain. The argument rings hollow. 5 For one thing, Dolye's professed expectations were unwarranted. The plea agreement contained no promise on the government's part either to seal the proceedings or to take any other steps to facilitate the defendant's cooperation. We have repeatedly refused to infer the existence of promises not expressly articulated in, or necessarily implied by, plea agreements,3 see, e.g., United States v. Atwood, 963 F.2d 476, ___ ____ _____________ ______ 479 (1st Cir. 1992); United States v. Garcia, 954 F.2d 12, 17 ______________ ______ (1st Cir. 1992); United States v. Hogan, 862 F.2d 386, 388 (1st _____________ _____ Cir. 1988), and we discern no basis for retreating today from that salutary proposition. Indeed, speculation about such a promise would be especially inconcinnous in this instance because, during the Rule 11 proceeding, appellant assured the district court that no one "made a promise to [him] in an effort to induce [him] to plead guilty aside from [those promises contained in] the plea agreement." For another thing, the circumstances of the secrecy order render appellant's professed reliance on it wholly gratuitous. The government moved to seal after the district _____ court accepted the guilty plea, stating in its written motion that it wanted to "protect the integrity of ongoing criminal investigations." We simply do not see how imperfect compliance with an order mentioned for the first time after appellant's plea ____________________ 3This familiar precept has particular applicability when, as in this case, the plea agreement itself specifically states that "there are no further or other agreements, either express or implied," other than those explicitly set forth in the document. 6 had been accepted, and represented to the court chiefly as a vehicle to serve the government's (not the defendant's) interests, could conceivably constitute a "fair and just" reason for retraction. This is especially so, we suggest, in view of appellant's grudging admission that any prosecutorial assurances about keeping his case under wraps came only after the court allowed his change of plea. Thirdly, appellant's argument depends on a profoundly flawed premise. He says his ability to cooperate was hampered by unforeseen events, specifically, the clerk's blunder. Yet, in any given case a host of external conditions may impede an accused's cooperation. In the last analysis, criminal defendants occupy no special refuge from the vagaries of an uncertain world. Cf. Tilley, 964 F.2d at 72-73 (denying a plea withdrawal where ___ ______ defendant asserted a breakdown in cooperation). A defendant's inability fully to perform his own undertakings, if attributable to a circumstance beyond the prosecution's control, does not constitute a cogent reason for allowing him to withdraw a guilty plea (unless, of course, the plea was expressly conditioned upon nonoccurrence of the event).4 ____________________ 4Appellant argues that his situation is exceptional inasmuch as the court's own mistake frustrated specific performance. This asseveration might have some force if the plea agreement contained a promise to impound records and the clerk's miscue effectively deprived appellant of the benefit of the promise. Here, however, for sentencing purposes, the court, by its own appraisal, took into account "the fact that [Doyle] did intend to and wanted to cooperate even though he was frustrated in doing so." Where no apparent loss of benefit exists there is simply no warrant for judicially rewriting plea agreements in an effort to ward off all contingencies harmful to one side. 7 2. Timing. Because the timing of a defendant's _______ attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just. While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses. See United States v. Daniels, 821 F.2d 76, 79 (1st ___ _____________ _______ Cir. 1987); United States v. Ramos, 810 F.2d 308, 313 (1st Cir. _____________ _____ 1987); United States v. Barker, 514 F.2d 208, 222 (D.C. Cir.), _____________ ______ cert. denied, 421 U.S. 1013 (1975). Put another way, excessive _____ ______ delay saps strength from any proffered reason for withdrawal. See Barker, 514 F.2d at 222 (observing that, "if the defendant ___ ______ has long delayed his withdrawal motion, . . . the reasons given to support withdrawal must have considerably more force"). Here, appellant's timing belies his rationale. As we have said, appellant's proffered reason for seeking to withdraw his plea is that the plea agreement was founded on the mistaken assumption that his opportunity to cooperate would be protected. The chronology of events inexorably implies that this "reason" was no more than a contrived excuse to escape the district court's forecasted sentence. Appellant learned of the leak two days after the Rule 11 hearing. He testified that "every newspaper, radio station, and TV station within 50 miles" promptly appeared on his doorstep, making "cooperation more than a little difficult." 8 Nonetheless, he did not seek to withdraw his plea for nearly seven months. That date, April 6, 1992, was (a) a mere four days after appellant discovered that the court was contemplating the imposition of a lengthy incarcerative sentence, and (b) a matter of minutes after defense counsel's failed attempt to elicit a new sentencing prognosis from the judge. On this record, appellant's professed reason for moving to withdraw his plea smacks of post-hoc rationalization. One would have to believe in the Tooth Fairy to think it merely coincidental that, on the heels of the court's divulgement of the likely sentence, the defendant suddenly realized that a seven- month-old error had destroyed the basis on which his plea agreement rested. We agree with the court below that appellant's newfound desire to hazard a trial can only be attributed to a dawning awareness "of what the likely sentence would be." 3. Legal Innocence. Courts look more hospitably on a ________________ motion to withdraw a guilty plea when the motion is coupled with an assertion of innocence. See Tilley, 964 F.2d at 73; Kobrosky, ___ ______ ________ 711 F.2d at 455. The reverse is also true: the absence of a claim of innocence weighs in favor of allowing a guilty plea to stand. Here, appellant unconditionally admitted his guilt at the Rule 11 proceeding and neither his subsequent motion to withdraw his plea nor, indeed, his appellate brief, contains an assertion of innocence. 4. Voluntariness. In assaying the merits of a motion ______________ to withdraw, an inquiring court must determine whether, in light 9 of the defendant's proffered reason and any newly disclosed facts, the plea may still be deemed voluntary and intelligent. See United States v. Austin, 948 F.2d 783, 786-87 (1st Cir. ___ ______________ ______ 1991); United States v. Allard, 926 F.2d 1237, 1245-47 (1st Cir. _____________ ______ 1991). In this case, the district court conducted the plea proceedings in strict conformity with Rule 11's requirements and succedent events cast no doubt on the court's contemporaneous conclusion that the plea was both voluntary and intelligent.5 In and of itself, the seven-month period preceding the motion to withdraw an interval wholly unexplained by plausible inferences consistent with appellant's proffered reason for wanting to scrap his plea serves to cripple any notion that the plea was coerced. See Pellerito, 878 F.2d at 1541-42. Moreover, the lack ___ _________ of any evidence that sealing the proceedings was part of the plea bargain militates strongly against appellant's argument that the plea was unintelligent due to a mistaken belief that the government would safeguard his opportunity to cooperate. After all, to invalidate a guilty plea, a defendant's misimpression must, at the very least, be both objectively reasonable and related to a material matter. See id. at 1538. Doyle's ___ ___ "mistake" does not qualify on either score. ____________________ 5We need not linger over appellant's claim that, as early as February 7, 1992, the court should have probed anew the voluntariness and intelligence of his plea. To be sure, courts will sometimes inquire sua sponte into alleged Rule 11 ___ ______ violations. See, e.g., Daniels, 821 F.2d at 81. Yet here, as we ___ ____ _______ have pointed out, the absence of a stated term in the plea agreement left the court without any practical way of tying the thwarted impoundment order to the plea. Thus, the district court did not err by failing to undertake a further inquiry sua sponte. ___ ______ 10 C C We need go no further.6 As the motion to seal formed no part of the plea agreement, there was never any breach. Furthermore, by communicating the extent of Doyle's cooperation and his good intention to do even more, the government lived up to its end of the bargain. It had promised no more and no more was exigible. See Atwood, 963 F.2d at 479 ("When . . . the ___ ______ prosecutor did exactly what the government promised to do, a claim that the plea agreement was breached will not lie."). Hence, the district court did not err in determining that appellant advanced no fair and just reason for retreating from his guilty plea. Affirmed. Affirmed. _________ ____________________ 6Since all the critical integers in the decisional calculus counsel affirmance, we need not embark upon an analysis of possible prejudice to the government. See Ramos, 810 F.2d at ___ _____ 315. 11