July 20, 1993 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1835

 UNITED STATES,

 Appellee,

 v.

 PETER MORAN HENRY,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jaime Pieras, Jr., U.S. District Judge]
 

 

 Before

 Boudin, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 

 

 Jose R. Gaztambide on brief for appellant.
 
 Charles E. Fitzwilliam, United States Attorney, Jeanette
 
Mercado-Rios, Assistant U.S. Attorney, and Jose A. Quiles on
 
brief for appellee.

 

 

 PER CURIAM. Defendant-appellant Peter Moran Henry
 

appeals the denial of a motion to withdraw his guilty plea in

the United States District Court for the District of Puerto

Rico. Finding no error in the decision of the district

court, we affirm.

 I

 Background
 

 Henry took his girlfriend, Hattie "Penny"

Middlebrook, and a friend of hers, Ruby Christine Marshall,

on a vacation to St. Lucia in September, 1991. Upon their

return to the airport in San Juan, Puerto Rico, Customs

Inspector Herdmann observed Middlebrook and Marshall walking

in a suspiciously rigid manner, apparently following the

directions provided by the physical gestures of a nervous

Henry. When the Inspector questioned the women, he found

that Middlebrook was carrying the customs declarations for

three travelers. When he asked who their male traveling

companion was, they identified Mr. Henry. Herdmann decided

that further investigation was required when he overheard

Henry tell another Inspector that he did not know Middlebrook

and Marshall. A search revealed packages, containing a

substance which was later established to be cocaine, taped to

the bodies of both women. No drugs were found in Henry's

possession.

 -2-
 2

 On October 9, 1991, a Federal Grand Jury returned a

true bill against Henry and codefendants Middlebrook and

Marshall for violations of 21 U.S.C. 841(a)(1), 952, 955

and 18 U.S.C. 2. The three count indictment charged that

on or about September 30, 1991, Henry, Middlebrook and

Marshall, aiding and abetting each other, did knowingly,

intentionally and unlawfully possess with intent to

distribute, and did import into the customs territory of the

United States from St. Lucia, approximately 2.3 kilograms of

cocaine, which cocaine was not part of the official supply

list nor part of the cargo manifest of the airline flight on

which the codefendants had travelled from St. Lucia to Puerto

Rico. Henry pled not guilty at his arraignment on October

24, 1991.

 On December 18, 1991, the first day of Henry's jury

trial, testimony was received from Inspector Herdmann (who

testified to the events in the airport recounted above) and

Middlebrook. Middlebrook testified that Henry left the motel

where the three were staying in St. Lucia each morning before

she awoke, and that he was gone for most of those days. She

further testified that, on the way to the airport for the

departure flight, Henry stopped at a man's house. He went

inside while Middlebrook and Marshall waited outside on the

porch. When he emerged, he told his companions that they

would be taking some drugs back to the United States. The

 -3-
 3

women entered the house where drugs were taped to their

bodies and they were outfitted with loose-fitting dresses.

The drugs were secured between Middlebrook's legs with

masking tape and a girdle which she identified at trial.

Middlebrook testified that she received instructions to walk

with her legs pressed together so that attention would not be

drawn to her walk. The court adjourned for the day after

Middlebrook described her encounter with Inspector Herdmann.

 On the second day of trial, before Middlebrook

could resume her testimony, Henry changed his plea to guilty

on all three counts. The court accepted his plea after

engaging in a colloquy in which Henry: (1) denied having

taken drugs, medicine or alcohol in the past twenty-four

hours; (2) denied being under the care of a doctor for a

mental or emotional condition; (3) affirmed that he was

satisfied with his attorney's representation; (4) declared

that he considered himself guilty; (5) acknowledged that he

understood that by pleading guilty he would be found guilty

without trial; (6) confessed to asking Middlebrook and

Marshall to carry the drugs; (7) demonstrated that he knew

the maximum sentence and fine he faced as a result of his

plea; (8) denied that he was being forced to change his plea;

(9) stated that he was pleading guilty for no other reason

than the fact that he was guilty; and (10) declared that he

had consulted with his attorney and understood the questions

 -4-
 4

he was being asked by the court. The judge ordered the

preparation of a presentence investigation report and

scheduled sentencing for March 19, 1992.

 On March 3, 1992, Henry filed a motion pro se to
 

withdraw his guilty plea. He claimed that he had been forced

to plead guilty by his lawyer and that he was confused at the

time he entered the plea because he was under the influence

of a variety of medications. The court assigned Henry a new

lawyer and rescheduled the sentencing hearing for June 24,

1992. On May 13, 1992, Henry, with the assistance of new

counsel, moved to withdraw his plea on the ground that

letters he had received from his girlfriend, codefendant

Middlebrook, proved that she had committed perjury at the

trial.1 At the sentencing hearing, the district court

 

1. The letters, postmarked January 27, 1992, and dated
December 29, 1991, January 1, 1992 and January 13, 1992,
included the following statements:
 Peter I'm so very sorry about what
 happened. I didn't know that I'll be
 talking to the United States Attorney.
 My lawyer didn't say anything to me
 before we arrived in Puerto Rico [to
 testify at the trial]. I have been
 thinking about what happened and the
 things that I said I was so scare[d] and
 I'm feeling so bad about it . . . .

 I can't help but think that you don't
 want to talk to me because of what I said
 and you know that's not true. But you
 know that I was scare[d] and I don't want
 to go back to that place. But if you
 don't want to talk to me I'll try and
 understand.

 -5-
 5

denied Henry's withdrawal motion, and sentenced him to a

seventy-month term of imprisonment, followed by four years of

supervised release.

 

The letters also reveal that Middlebrook believed herself to
be pregnant with Henry's child.

 -6-
 6

 II

 Analysis
 

 It is well established that a defendant, having

chosen to plead guilty, possesses no absolute right to

withdraw his or her plea. United States v. Tilley, 964 F.2d
 

66, 72 (1st Cir. 1992); United States v. Austin, 948 F.2d
 

783, 786 (1st Cir. 1991); United States v. Pellerito, 878
 

F.2d 1535, 1537 (1st Cir. 1989); United States v. Buckley,
 

847 F.2d 991, 998 (1st Cir. 1988), cert. denied, 488 U.S.
 

1015 (1989); United States v. Ramos, 810 F.2d 308, 311 (1st
 

Cir. 1987). Where a motion to withdraw is brought prior to

sentencing, as was done in this case, the district court

should allow it only if there is a "fair and just reason" for

doing so. Fed. R. Crim. P. 32(d); United States v. Doyle,
 

981 F.2d 591, 594 (1st Cir. 1992); Tilley, 964 F.2d at 72;
 

Austin, 948 F.2d at 786; Buckley, 847 F.2d at 998; United
 

States v. Kobrosky, 711 F.2d 449, 454 (1st Cir. 1983).
 

 This court has held that the following factors must

be evaluated in deciding whether a "fair and just reason" has

been offered in support of a withdrawal motion:

 (1) the timing of defendant's change of
 heart; (2) the force and plausibility of
 the reason; (3) whether the defendant has
 asserted his legal innocence; (4) whether
 the parties had reached (or breached) a
 plea agreement; and (5) most importantly,
 whether the defendant's guilty plea can
 still be regarded as voluntary,
 intelligent, and otherwise in conformity
 with Rule 11 of the Federal Rules of

 -7-
 7

 Criminal Procedure in light of the
 proffered reason and the disclosed
 circumstances.

Pellerito, 878 F.2d at 1537 (citations omitted). See also,
 

Doyle, 981 F.2d at 594; Tilley, 964 F.2d at 72. After
 

performing this analysis, "[i]f the combined weight of these

factors tilts in the defendant's favor, then the court must

also assess the quantum of prejudice, if any, that will inure

to the government." Doyle, 981 F.2d at 594. We review the
 

denial of a motion to withdraw a guilty plea for abuse of

discretion. Id.; Tilley, 964 F.2d at 72; Pellerito, 878 F.2d
 

at 1538; Kobrosky, 711 F.2d at 454.
 

 A. Timing
 

 As this court recently stated in Doyle,
 

 [b]ecause the timing of a defendant's
 attempted plea withdrawal is highly
 probative of motive, close scrutiny of
 the chronology is important in
 adjudicating whether retraction is fair
 and just. While an immediate change of
 
 heart may well lend considerable force to
 
 a plea withdrawal request, a long
 
 interval between the plea and the request
 
 often weakens any claim that the plea was
 
 entered in confusion or under false
 
 pretenses.
 

Doyle, 981 F.2d at 595 (emphasis added). On appeal, Henry
 

claims that his change of heart occurred on March 3, 1992,

after receiving what he claims to be exculpatory letters from

his girlfriend, and codefendant, Middlebrook. In an effort

to put the best light on his case, he claims that this

 -8-
 8

happened over ninety days prior to the actual sentencing

hearing held on June 24, 1992.

 We see the facts somewhat differently. Henry first

attempted to change his plea seventy-five days after he

entered the guilty plea at trial, and only sixteen days prior

to the originally scheduled sentencing hearing.2 Appellant

made no mention of the letters from Middlebrook in his

motion. Rather, he claimed that he was forced by his lawyer

to plead guilty and that he was under the influence of

prescription drugs at the time he entered the plea. Henry

did not seize on the Middlebrook letters as a reason for his

change of heart until his May 13, 1992 motion.

 It was reasonable for the district court to infer

from the seventy-five day delay between appellant's guilty

plea and his withdrawal motion, and the proximity of his

withdrawal request to his scheduled sentencing hearing, that

Henry did not experience the kind of "swift change of heart"

that would indicate that the guilty plea was entered in

"haste and confusion." Ramos, 810 F.2d at 312. As this
 

court noted in affirming the denial of a withdrawal motion

filed eight weeks after the original plea was accepted, "a

long delay between the plea and the motion to revoke belies a

claim that the plea was entered in haste and confusion and

 

2. The date of the actual sentencing hearing is irrelevant
to our evaluation of this factor.

 -9-
 9

requires compelling reasons to support it." United States v.
 

Crosby, 714 F.2d 185, 192 (1st Cir. 1983) (citing United
 

States v. Barker, 514 F.2d 208, 222 (D.C. Cir.), cert.
 

denied, 421 U.S. 1013 (1975)), cert. denied, 464 U.S. 1045
 

(1984). Appellant has offered no explanation for the long

delay before his first motion to withdraw his plea. It is

clear that receipt of the Middlebrook letters were not the

proximate cause of his decision to change his plea because

those letters were not mentioned in his March, 1992 motion.

 B. Force and Plausibility of the Proffered Reasons
 

 At the June 24, 1992 hearing, appellant and his

counsel offered several reasons in support of his withdrawal

motion: the Middlebrook letters showed that she perjured

herself at his trial; his consumption of prescription drugs

at the time of his trial made him confused; he was pushed by

his lawyer to plead guilty; and, he was in "emotional

distress" at the time of his plea because Middlebrook was

pregnant with his child. The district court considered the

force and plausibility of these reasons, and found them to be

inadequate to support the withdrawal motion.

 The court "scrutinized" the content of the letters

and stated that it did "not see anything there that would

affect the plea of guilty . . . entered in December of 1991."

The court further stated that it did "not find them to

suggest any instance of perjury." On appeal, appellant

 -10-
 10

merely asserts that the letters should have been presented to

a jury to determine their force and credibility. We

disagree. The district court has the discretion to grant

plea withdrawal motions, and it is therefore properly within

the province of the district court to conduct the required

five-part inquiry, including an evaluation of the force and

plausibility of the reasons proffered for the change of plea.

We have read the Middlebrook letters and cannot say that the

district court's finding was clearly erroneous, especially in

light of the fact that the same court heard Middlebrook

testify at trial. While the letters may tend to show that

Middlebrook regretted the role she played in her boyfriend's

incarceration, it is not self-evident that the letters either

constitute an admission of perjury or provide evidence that

perjury was committed.

 The court rejected appellant's contention that his

plea at trial was influenced by his consumption of

prescription medicines. At the sentencing hearing, the court

noted that Henry had been asked at the time of his plea

whether he had taken drugs, medicine or alcohol in the past

twenty-four hours, and that the appellant had answered in the

negative. Later in the sentencing hearing, Henry's counsel3

agreed that the trial court had properly determined that

 

3. The attorney who represented appellant at the sentencing
hearing replaced Henry's trial counsel. Replacement counsel
also represented Henry on appeal.

 -11-
 11

appellant was not under the influence of medications when he

changed his plea to guilty.

 The court found that appellant's trial attorney had

not coerced him into pleading guilty. Indeed, the court

stated that his lawyer's advice was

 proper and sound. And it was looking for
 the welfare of this defendant. And I
 don't think he induced the defendant into
 doing anything but to tell the defendant
 the truth and that the defendant took
 this decision upon his own free will
 because he was present. He heard two
 days of testimony of witnesses against
 him.
 . . . .
 Having observed Attorney Garcia come in
 this case and the circumstances which led
 to the defendant's plea[] of guilty. The
 Court is disincline[d] to accept your
 assertions.
 Contrary to that I believe Mr. Garcia
 gave you good advice.

Appellant does not contest this finding on appeal, and we

find nothing in the record to upset the district court's

findings.

 Appellant did not raise his "emotional distress"

theory on appeal. 

 C. Legal Innocence
 

 At no time has appellant directly stated that he is

legally innocent of the charges to which he pled guilty on

December 19, 1991. On that date, during the Rule 11 hearing,

appellant said that he asked Middlebrook and Marshall to

carry the drugs, and stated:

 -12-
 12

 But I'm taking the blame because I asked
 them and I had no business to ask them to
 take drugs. We didn't go to St. Lucia to
 get drugs. That's not what we go to St.
 Lucia for. But they were taking the
 drugs and when we go to Puerto Rico they
 got busted. They had drugs and I didn't
 have nothing and I feel guilty and I feel
 sorry because I knew what I asked them to
 do was against the law. So what I'm
 asking the Court today, I am asking you,
 Judge, if I could get some type of
 leniency, maybe 42 months or 36 months,
 or I am not going to put no time, but a
 time to be in jail for the crime that I
 help committed [sic].4

Appellant clearly acknowledged that he felt guilty for his

role in aiding and abetting the importation of cocaine into

the United States. On appeal, Henry merely claims that he is

legally innocent because "he had not carried drugs nor forced

anyone to bring drugs into the United States." That

assertion is an insufficient expression of legal innocence

because he did not assert his innocence of the crimes with

which he was charged. As we noted in Doyle, "the absence of
 

a claim of innocence weighs in favor of allowing a guilty

plea to stand." Doyle, 981 F.2d at 596.
 

 D. Breach of Plea Agreement
 

 Because there never was a plea agreement between

the appellant and the government, this factor bears no weight

 

4. Although the record, on appeal, does not include a
transcript of the trial proceedings, including the plea
colloquy, a copy of the transcript was appended to the
appellant's brief, and the government quoted parts of this
passage in its brief.

 -13-
 13

in our calculus. Henry contends that the district court was

confused, and thought that there had, in fact, been a plea

agreement in this case. Our review of the transcript of the

sentencing hearing indicates that the court had a clear

understanding of the situation. The court cited the five-

factor test outlined above and endorsed in Tilley. When it
 

reached this fourth factor the court stated: "Four, when the

parties have reached or breached a plea agreement. Well, I

guess if he withdraw[s] his plea now I guess he's breaching

his plea agreement. Although that's not what this refers

to." By stating "that's not what this refers to," and moving

on to the fifth factor, the court recognized that the breach

of a plea agreement between the government and a defendant

contemplated by this factor was not implicated in this

case.5

 E. Voluntariness
 

 The fifth factor which must be considered in

evaluating the strength of appellant's motion to withdraw is

whether, "in light of the defendant's proffered reason and

any newly disclosed facts, the plea may still be deemed

voluntary and intelligent." Doyle, 981 F.2d at 596 (citing
 

 

5. We note that there were times in the hearing when the
court seems to have applied the Tilley factors to appellant's
 
change of plea at trial, rather than to the circumstances
surrounding his subsequent efforts to withdraw his guilty
plea. Notwithstanding this apparent confusion, a review of
the entire record supports the court's ultimate decision to
deny appellant's motion.

 -14-
 14

United States v. Austin, 948 F.2d 783, 786-87 (1st Cir.
 

1991); United States v. Allard, 926 F.2d 1237, 1245-47 (1st
 

Cir. 1991)). Appellant contends on appeal that the

transcript of his plea colloquy at trial shows that he was

indecisive about his plea, and that the hearing was "both

defective and incomplete." We disagree. The district court

complied fully with the requirements of Fed. R. Crim. P. 11.

 Appellant initially resisted accepting the

government's version of the facts of the case. When offered

the opportunity to explain with what facts he disagreed, he

stated

 I didn't agree because both of the
 ladies one lady I'm in love with and
 the other lady, they old enough to
 understand that the drugs is not legal to
 carry in the United States. All they
 have to tell me is that they are not
 going to carry it. There was no force,
 no push. I asked them not one time.
 They sleep on it Sunday night. Monday
 morning I asked them the same question,
 and it was agreed that they would do it,
 without no force.
 So I figure that I'm guilty by asking
 them to carry the cocaine, but they also
 have to hold their responsibility to
 carry it because I didn't put no force on
 them to carry these drugs when they know
 the drugs is not legal to carry. I only
 asked them, and the word was said in
 front of them when the guy front we with
 it. We was sitting at the table. All
 they have to say, "I'm not coming down
 for this, I'm not going to do this."
 So I figure like they should hold some
 type of responsibility to carry the
 drugs, if the state attorney didn't make
 a deal with them that they going to get
 less time.

 -15-
 15

This explanation reveals that, although he did dispute some

of the details of the government's case, appellant did not

disagree with the fact that he facilitated the importation of

illegal drugs into the United States. His statement reveals

a greater concern with informing the court that he had not

forced the women to carry the drugs, than with denying his

guilt for his role in the scheme. In sum, there is no

evidence that appellant was unsure of his plea, nor is there

evidence that the plea was coerced or entered without a full

understanding of the consequences.

 F. Prejudice to Government
 

 Because analysis of each of the five factors

supports the district court's denial of appellant's

withdrawal motion, we need not consider the possible

prejudice to government of reversing the decision below.

Doyle, 981 F.2d at 596 n.6 (citing Ramos, 810 F.2d at 315).
 

 III

 Conclusion
 

 Because the appellant has not made the showing

required to reverse a district court's denial of a motion to

withdraw a plea, the decision of the district court is

 Affirmed.
 

 -16-
 16