998 F.2d 1001
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Peter Moran HENRY, Defendant, Appellant.
 No. 92-1835.
 United States Court of Appeals,
First Circuit.
 July 20, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 Jose R. Gaztambide on brief for appellant.
 Charles E. Fitzwilliam, United States Attorney, Jeanette Mercado-Rios, Assistant U.S. Attorney, and Jose A. Quiles on brief for appellee.
 D. Puerto Rico
 AFFIRMED.
 Before Boudin, Circuit Judge, Bownes, Senior Circuit Judge, and Stahl, Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Peter Moran Henry appeals the denial of a motion to withdraw his guilty plea in the United States District Court for the District of Puerto Rico. Finding no error in the decision of the district court, we affirm.
 
 
 2
 * Background
 
 
 3
 Henry took his girlfriend, Hattie "Penny" Middlebrook, and a friend of hers, Ruby Christine Marshall, on a vacation to St. Lucia in September, 1991. Upon their return to the airport in San Juan, Puerto Rico, Customs Inspector Herdmann observed Middlebrook and Marshall walking in a suspiciously rigid manner, apparently following the directions provided by the physical gestures of a nervous Henry. When the Inspector questioned the women, he found that Middlebrook was carrying the customs declarations for three travelers. When he asked who their male traveling companion was, they identified Mr. Henry. Herdmann decided that further investigation was required when he overheard Henry tell another Inspector that he did not know Middlebrook and Marshall. A search revealed packages, containing a substance which was later established to be cocaine, taped to the bodies of both women. No drugs were found in Henry's possession.
 
 
 4
 On October 9, 1991, a Federal Grand Jury returned a true bill against Henry and codefendants Middlebrook and Marshall for violations of 21 U.S.C. §§ 841(a)(1), 952, 955 and 18 U.S.C. § 2. The three count indictment charged that on or about September 30, 1991, Henry, Middlebrook and Marshall, aiding and abetting each other, did knowingly, intentionally and unlawfully possess with intent to distribute, and did import into the customs territory of the United States from St. Lucia, approximately 2.3 kilograms of cocaine, which cocaine was not part of the official supply list nor part of the cargo manifest of the airline flight on which the codefendants had travelled from St. Lucia to Puerto Rico. Henry pled not guilty at his arraignment on October 24, 1991.
 
 
 5
 On December 18, 1991, the first day of Henry's jury trial, testimony was received from Inspector Herdmann (who testified to the events in the airport recounted above) and Middlebrook. Middlebrook testified that Henry left the motel where the three were staying in St. Lucia each morning before she awoke, and that he was gone for most of those days. She further testified that, on the way to the airport for the departure flight, Henry stopped at a man's house. He went inside while Middlebrook and Marshall waited outside on the porch. When he emerged, he told his companions that they would be taking some drugs back to the United States. The women entered the house where drugs were taped to their bodies and they were outfitted with loose-fitting dresses. The drugs were secured between Middlebrook's legs with masking tape and a girdle which she identified at trial. Middlebrook testified that she received instructions to walk with her legs pressed together so that attention would not be drawn to her walk. The court adjourned for the day after Middlebrook described her encounter with Inspector Herdmann.
 
 
 6
 On the second day of trial, before Middlebrook could resume her testimony, Henry changed his plea to guilty on all three counts. The court accepted his plea after engaging in a colloquy in which Henry: (1) denied having taken drugs, medicine or alcohol in the past twenty-four hours; (2) denied being under the care of a doctor for a mental or emotional condition; (3) affirmed that he was satisfied with his attorney's representation; (4) declared that he considered himself guilty; (5) acknowledged that he understood that by pleading guilty he would be found guilty without trial; (6) confessed to asking Middlebrook and Marshall to carry the drugs; (7) demonstrated that he knew the maximum sentence and fine he faced as a result of his plea; (8) denied that he was being forced to change his plea; (9) stated that he was pleading guilty for no other reason than the fact that he was guilty; and (10) declared that he had consulted with his attorney and understood the questions he was being asked by the court. The judge ordered the preparation of a presentence investigation report and scheduled sentencing for March 19, 1992.
 
 
 7
 On March 3, 1992, Henry filed a motion pro se to withdraw his guilty plea. He claimed that he had been forced to plead guilty by his lawyer and that he was confused at the time he entered the plea because he was under the influence of a variety of medications. The court assigned Henry a new lawyer and rescheduled the sentencing hearing for June 24, 1992. On May 13, 1992, Henry, with the assistance of new counsel, moved to withdraw his plea on the ground that letters he had received from his girlfriend, codefendant Middlebrook, proved that she had committed perjury at the trial.[1] At the sentencing hearing, the district court denied Henry's withdrawal motion, and sentenced him to a seventy-month term of imprisonment, followed by four years of supervised release.
 
 II
 Analysis
 
 8
 It is well established that a defendant, having chosen to plead guilty, possesses no absolute right to withdraw his or her plea. United States v. Tilley, 964 F.2d 66, 72 (1st Cir. 1992); United States v. Austin, 948 F.2d 783, 786 (1st Cir. 1991); United States v. Pellerito, 878 F.2d 1535, 1537 (1st Cir. 1989); United States v. Buckley, 847 F.2d 991, 998 (1st Cir. 1988), cert. denied, 488 U.S. 1015 (1989); United States v. Ramos, 810 F.2d 308, 311 (1st Cir. 1987). Where a motion to withdraw is brought prior to sentencing, as was done in this case, the district court should allow it only if there is a "fair and just reason" for doing so. Fed. R. Crim. P. 32(d); United States v. Doyle, 981 F.2d 591, 594 (1st Cir. 1992); Tilley, 964 F.2d at 72; Austin, 948 F.2d at 786; Buckley, 847 F.2d at 998; United States v. Kobrosky, 711 F.2d 449, 454 (1st Cir. 1983).
 
 
 9
 This court has held that the following factors must be evaluated in deciding whether a "fair and just reason" has been offered in support of a withdrawal motion:
 
 
 10
 (1) the timing of defendant's change of heart; (2) the force and plausibility of the reason; (3) whether the defendant has asserted his legal innocence; (4) whether the parties had reached (or breached) a plea agreement; and (5) most importantly, whether the defendant's guilty plea can still be regarded as voluntary, intelligent, and otherwise in conformity with Rule 11 of the Federal Rules of Criminal Procedure in light of the proffered reason and the disclosed circumstances.
 
 
 11
 Pellerito, 878 F.2d at 1537 (citations omitted). See also, Doyle, 981 F.2d at 594; Tilley, 964 F.2d at 72. After performing this analysis, "[i]f the combined weight of these factors tilts in the defendant's favor, then the court must also assess the quantum of prejudice, if any, that will inure to the government." Doyle, 981 F.2d at 594. We review the denial of a motion to withdraw a guilty plea for abuse of discretion. Id.; Tilley, 964 F.2d at 72; Pellerito, 878 F.2d at 1538; Kobrosky, 711 F.2d at 454.
 
 A. Timing
 
 12
 As this court recently stated in Doyle,
 
 
 13
 [b]ecause the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just. While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses.
 
 
 14
 Doyle, 981 F.2d at 595 (emphasis added). On appeal, Henry claims that his change of heart occurred on March 3, 1992, after receiving what he claims to be exculpatory letters from his girlfriend, and codefendant, Middlebrook. In an effort to put the best light on his case, he claims that this happened over ninety days prior to the actual sentencing hearing held on June 24, 1992.
 
 
 15
 We see the facts somewhat differently. Henry first attempted to change his plea seventy-five days after he entered the guilty plea at trial, and only sixteen days prior to the originally scheduled sentencing hearing.[2] Appellant made no mention of the letters from Middlebrook in his motion. Rather, he claimed that he was forced by his lawyer to plead guilty and that he was under the influence of prescription drugs at the time he entered the plea. Henry did not seize on the Middlebrook letters as a reason for his change of heart until his May 13, 1992 motion.
 
 
 16
 It was reasonable for the district court to infer from the seventy-five day delay between appellant's guilty plea and his withdrawal motion, and the proximity of his withdrawal request to his scheduled sentencing hearing, that Henry did not experience the kind of "swift change of heart" that would indicate that the guilty plea was entered in "haste and confusion." Ramos, 810 F.2d at 312. As this court noted in affirming the denial of a withdrawal motion filed eight weeks after the original plea was accepted, "a long delay between the plea and the motion to revoke belies a claim that the plea was entered in haste and confusion and requires compelling reasons to support it." United States v. Crosby, 714 F.2d 185, 192 (1st Cir. 1983) (citing United States v. Barker, 514 F.2d 208, 222 (D.C. Cir.), cert. denied, 421 U.S. 1013 (1975)), cert. denied, 464 U.S. 1045 (1984). Appellant has offered no explanation for the long delay before his first motion to withdraw his plea. It is clear that receipt of the Middlebrook letters were not the proximate cause of his decision to change his plea because those letters were not mentioned in his March, 1992 motion.
 
 
 17
 B. Force and Plausibility of the Proffered Reasons
 
 
 18
 At the June 24, 1992 hearing, appellant and his counsel offered several reasons in support of his withdrawal motion: the Middlebrook letters showed that she perjured herself at his trial; his consumption of prescription drugs at the time of his trial made him confused; he was pushed by his lawyer to plead guilty; and, he was in "emotional distress" at the time of his plea because Middlebrook was pregnant with his child. The district court considered the force and plausibility of these reasons, and found them to be inadequate to support the withdrawal motion.
 
 
 19
 The court "scrutinized" the content of the letters and stated that it did "not see anything there that would affect the plea of guilty ... entered in December of 1991." The court further stated that it did "not find them to suggest any instance of perjury." On appeal, appellant merely asserts that the letters should have been presented to a jury to determine their force and credibility. We disagree. The district court has the discretion to grant plea withdrawal motions, and it is therefore properly within the province of the district court to conduct the required five-part inquiry, including an evaluation of the force and plausibility of the reasons proffered for the change of plea. We have read the Middlebrook letters and cannot say that the district court's finding was clearly erroneous, especially in light of the fact that the same court heard Middlebrook testify at trial. While the letters may tend to show that Middlebrook regretted the role she played in her boyfriend's incarceration, it is not self-evident that the letters either constitute an admission of perjury or provide evidence that perjury was committed.
 
 
 20
 The court rejected appellant's contention that his plea at trial was influenced by his consumption of prescription medicines. At the sentencing hearing, the court noted that Henry had been asked at the time of his plea whether he had taken drugs, medicine or alcohol in the past twenty-four hours, and that the appellant had answered in the negative. Later in the sentencing hearing, Henry's counsel[3] agreed that the trial court had properly determined that appellant was not under the influence of medications when he changed his plea to guilty.
 
 
 21
 The court found that appellant's trial attorney had not coerced him into pleading guilty. Indeed, the court stated that his lawyer's advice was
 
 
 22
 proper and sound. And it was looking for the welfare of this defendant. And I don't think he induced the defendant into doing anything but to tell the defendant the truth and that the defendant took this decision upon his own free will because he was present. He heard two days of testimony of witnesses against him.
 
 
 23
 ....
 
 
 24
 Having observed Attorney Garcia come in this case and the circumstances which led to the defendant's plea[ ] of guilty. The Court is disincline[d] to accept your assertions.
 
 
 25
 Contrary to that I believe Mr. Garcia gave you good advice.
 
 
 26
 Appellant does not contest this finding on appeal, and we find nothing in the record to upset the district court's findings.
 
 
 27
 Appellant did not raise his "emotional distress" theory on appeal.
 
 C. Legal Innocence
 
 28
 At no time has appellant directly stated that he is legally innocent of the charges to which he pled guilty on December 19, 1991. On that date, during the Rule 11 hearing, appellant said that he asked Middlebrook and Marshall to carry the drugs, and stated:
 
 
 29
 But I'm taking the blame because I asked them and I had no business to ask them to take drugs. We didn't go to St. Lucia to get drugs. That's not what we go to St. Lucia for. But they were taking the drugs and when we go to Puerto Rico they got busted. They had drugs and I didn't have nothing and I feel guilty and I feel sorry because I knew what I asked them to do was against the law. So what I'm asking the Court today, I am asking you, Judge, if I could get some type of leniency, maybe 42 months or 36 months, or I am not going to put no time, but a time to be in jail for the crime that I help committed [sic].[4]
 
 
 30
 Appellant clearly acknowledged that he felt guilty for his role in aiding and abetting the importation of cocaine into the United States. On appeal, Henry merely claims that he is legally innocent because "he had not carried drugs nor forced anyone to bring drugs into the United States." That assertion is an insufficient expression of legal innocence because he did not assert his innocence of the crimes with which he was charged. As we noted in Doyle, "the absence of a claim of innocence weighs in favor of allowing a guilty plea to stand." Doyle, 981 F.2d at 596.
 
 D. Breach of Plea Agreement
 
 31
 Because there never was a plea agreement between the appellant and the government, this factor bears no weight in our calculus. Henry contends that the district court was confused, and thought that there had, in fact, been a plea agreement in this case. Our review of the transcript of the sentencing hearing indicates that the court had a clear understanding of the situation. The court cited the five-factor test outlined above and endorsed in Tilley. When it reached this fourth factor the court stated: "Four, when the parties have reached or breached a plea agreement. Well, I guess if he withdraw [s] his plea now I guess he's breaching his plea agreement. Although that's not what this refers to." By stating "that's not what this refers to," and moving on to the fifth factor, the court recognized that the breach of a plea agreement between the government and a defendant contemplated by this factor was not implicated in this case.[5]
 
 E. Voluntariness
 
 32
 The fifth factor which must be considered in evaluating the strength of appellant's motion to withdraw is whether, "in light of the defendant's proffered reason and any newly disclosed facts, the plea may still be deemed voluntary and intelligent." Doyle, 981 F.2d at 596 (citing United States v. Austin, 948 F.2d 783, 786-87 (1st Cir. 1991); United States v. Allard, 926 F. 2d 1237, 1245-47 (1st Cir. 1991)). Appellant contends on appeal that the transcript of his plea colloquy at trial shows that he was indecisive about his plea, and that the hearing was "both defective and incomplete." We disagree. The district court complied fully with the requirements of Fed. R. Crim. P. 11.
 
 
 33
 Appellant initially resisted accepting the government's version of the facts of the case. When offered the opportunity to explain with what facts he disagreed, he stated
 
 
 34
 I didn't agree because both of the ladies-one lady I'm in love with and the other lady, they old enough to understand that the drugs is not legal to carry in the United States. All they have to tell me is that they are not going to carry it. There was no force, no push. I asked them not one time. They sleep on it Sunday night. Monday morning I asked them the same question, and it was agreed that they would do it, without no force.
 
 
 35
 So I figure that I'm guilty by asking them to carry the cocaine, but they also have to hold their responsibility to carry it because I didn't put no force on them to carry these drugs when they know the drugs is not legal to carry. I only asked them, and the word was said in front of them when the guy front we with it. We was sitting at the table. All they have to say, "I'm not coming down for this, I'm not going to do this."
 
 
 36
 So I figure like they should hold some type of responsibility to carry the drugs, if the state attorney didn't make a deal with them that they going to get less time.
 
 
 37
 This explanation reveals that, although he did dispute some of the details of the government's case, appellant did not disagree with the fact that he facilitated the importation of illegal drugs into the United States. His statement reveals a greater concern with informing the court that he had not forced the women to carry the drugs, than with denying his guilt for his role in the scheme. In sum, there is no evidence that appellant was unsure of his plea, nor is there evidence that the plea was coerced or entered without a full understanding of the consequences.
 
 F. Prejudice to Government
 
 38
 Because analysis of each of the five factors supports the district court's denial of appellant's withdrawal motion, we need not consider the possible prejudice to government of reversing the decision below. Doyle, 981 F.2d at 596 n.6 (citing Ramos, 810 F.2d at 315).
 
 III
 Conclusion
 
 39
 Because the appellant has not made the showing required to reverse a district court's denial of a motion to withdraw a plea, the decision of the district court is Affirmed.
 
 
 
 [1]
 The letters, postmarked January 27, 1992, and dated December 29, 1991, January 1, 1992 and January 13, 1992, included the following statements:
 Peter I'm so very sorry about what happened. I didn't know that I'll be talking to the United States Attorney. My lawyer didn't say anything to me before we arrived in Puerto Rico [to testify at the trial]. I have been thinking about what happened and the things that I said I was so scare[d] and I'm feeling so bad about it....
 I can't help but think that you don't want to talk to me because of what I said and you know that's not true. But you know that I was scare[d] and I don't want to go back to that place. But if you don't want to talk to me I'll try and understand.
 The letters also reveal that Middlebrook believed herself to be pregnant with Henry's child.
 
 
 [2]
 The date of the actual sentencing hearing is irrelevant to our evaluation of this factor
 
 
 [3]
 The attorney who represented appellant at the sentencing hearing replaced Henry's trial counsel. Replacement counsel also represented Henry on appeal
 
 
 [4]
 Although the record, on appeal, does not include a transcript of the trial proceedings, including the plea colloquy, a copy of the transcript was appended to the appellant's brief, and the government quoted parts of this passage in its brief
 
 
 [5]
 We note that there were times in the hearing when the court seems to have applied the Tilley factors to appellant's change of plea at trial, rather than to the circumstances surrounding his subsequent efforts to withdraw his guilty plea. Notwithstanding this apparent confusion, a review of the entire record supports the court's ultimate decision to deny appellant's motion