**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3907
_____

UNITED STATES OF AMERICA

v.

DENNIS L. BRUNO,
                    Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3:11-cr-00015-1)
District Judge: Honorable Kim R. Gibson

_____

Submitted Under Third Circuit LAR 34.1(a)
June 9, 2015

Before: AMBRO and COWEN, <u>Circuit</u> <u>Judges</u>, and RESTANI,[*] <u>Judge</u>.

(Opinion Filed: June 10, 2015)
_____

OPINION[**]
_____

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTANI, <u>Judge</u>.

Appellant Dr. Dennis Bruno ("Dr. Bruno") appeals the district court's denial of his motion to withdraw his plea of guilty to one count of violating 18 U.S.C. § 666(a)(1)(A). For the reasons stated below, we will affirm.

I.

Dr. Bruno previously served as superintendent of the Glendale School District in Pennsylvania. In February 2005, Dr. Bruno submitted a grant application to the U.S. Department of Education ("DOE") seeking funding to expand high-speed wireless internet service to the Glendale Yearound ("Yearound") community, a rural community with difficulty accessing affordable high-speed internet. According to the grant, Sting Communications ("Sting"), which provided internet services to the school district and some surrounding communities, would install and operate the network expansion.

The DOE approved the grant and made three disbursements totaling $49,600. In August 2006, Dr. Bruno completed a grant performance report, wherein he indicated that the entirety of the funds had been disbursed, described the equipment that had been installed, and stated that the project had been "very successful." App. 37a. In May 2010, Dr. Bruno received a "target letter" advising him that he was under investigation regarding the possible misuse of federal grant money. The investigating agent, Agent Blissman, testified that "Dr. Bruno admitted to me that . . . the service at the Glendale Yearound was never completed." App. 37a.

2

Dr. Bruno subsequently agreed to cooperate with the government in investigating potential crimes committed by Sting's president, Darol Lain, and a consultant who assisted Dr. Bruno in obtaining DOE grants, David Watkin.[1] In May 2011, the government filed a one count information charging Dr. Bruno with violating 18 U.S.C. § 666(a)(1)(A). That same day, Dr. Bruno made an initial appearance before the district court, waived his right to an indictment, and entered a guilty plea. Dr. Bruno also agreed to waive his right to appeal, subject to a few limited exceptions not relevant here.

Sentencing was postponed several times while Dr. Bruno continued to assist the government in its ongoing investigations. On August 21, 2013, shortly before the rescheduled sentencing, he filed a motion to withdraw his guilty plea. Dr. Bruno alleged that he was misled by the government into believing that the Yearound work had not been completed, despite evidence supposedly to the contrary, and believing that he was criminally liable because he negligently failed to perform the appropriate due diligence in ensuring that the work was completed. Dr. Bruno also asserted that the district court performed a deficient colloquy before accepting his guilty plea. He claimed that had the district court performed a proper colloquy, his mistaken belief that he could be held criminally liable simply for negligent oversight would have been corrected. Dr. Bruno also explained that he had not been informed that he would lose his substantial pension as a result of his guilty plea.

---

[1] The government ultimately declined to prosecute Lain or Watkin.

After briefing and oral argument, the district court denied the motion. It concluded that Dr. Bruno had failed to make an adequate factual showing to buttress his claims of innocence, that he had a sufficient understanding of the charge when he pleaded guilty, and that the collateral consequence of losing his pension was not a sufficient reason to permit him to withdraw his plea. Following the denial of the motion, Dr. Bruno was sentenced to five years of probation, with the condition that ten months be served on home confinement, and ordered to pay restitution in the amount of $49,600.

Dr. Bruno now appeals the denial of his motion to withdraw his guilty plea.

## II.

The government argues that we should enforce Dr. Bruno's appellate waiver and decline to address the merits of his arguments. It is undisputed that Dr. Bruno waived his appellate rights in conjunction with entering his guilty plea, subject to a few limited exceptions that are not applicable in this case. We have stated, however, that "it would constitute a miscarriage of justice to enforce a guilty plea made pursuant to a plea agreement if the defendant should have been permitted to withdraw." United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005). Because Dr. Bruno's claims are limited to the district court's acceptance of his guilty plea and the court's subsequent refusal to allow him to withdraw that plea, we will address the merits of his claims. See id.

## III.

Dr. Bruno argues that he must be given the opportunity to plead anew because the district court violated Federal Rule of Criminal Procedure 11 when it accepted his plea.

According to Dr. Bruno, the district court erred first by failing to establish a factual basis for the plea as required by Rule 11(b)(3), and, because the district court did not understand the factual basis of the charge, failed to properly question him as to his understanding of the relationship between the law and the facts underlying the charge as required by Rule 11(b)(1)(G). We exercise plenary review in determining whether there was a Rule 11 violation, but we will reverse only when an error affects the defendant's substantial rights. See United States v. Ebel, 299 F.3d 187, 190–91 (3d Cir. 2002). Thus, we consider the nature of the error and the record as a whole to determine whether it "appears unlikely that the error materially hampered [the defendant's] ability to assess the risks and benefits of pleading guilty." United States v. Powell, 269 F.3d 175, 185 (3d Cir. 2001). We hold that to the extent there was any error, it was harmless.[2]

To establish the factual basis for the plea, the district court relied on the prosecution's proffer of what would be proved at trial. Regarding the element of intentional misappropriation, the prosecution stated that the grant funds "were intentionally misapplied by Dr. Bruno, in that he received those funds and diverted or applied those funds in various other ways that weren't in direct accordance with the funding, as required by the Department of Education when they allocated and gave that money to Glendale School District." App. 93a. Dr. Bruno contends that had the district

---

[2] The government asserts that we should review for plain error because no Rule 11 objection was made at the plea hearing. The cases cited by the government supporting this proposition all considered Rule 11 violations that were not presented to the district court at all, whereas here Dr. Bruno raised the issues in his motion to withdraw his plea. Because the result we reach would be the same whether review is for harmless error or plain error, we need not decide which standard applies.

court ascertained the specific acts allegedly constituting the intentional misapplication, Dr. Bruno would have denied that he intentionally used funds in an unauthorized manner. And because the prosecution's statement was so general, the district court could not adequately question Dr. Bruno as to his understanding of the facts and how those facts related to the charge. Thus, according to Dr. Bruno, the Rule 11 violations caused Dr. Bruno to enter "an uniformed guilty plea to the crime charged in the Information." Appellant's Br. 28.

The colloquy itself lends significant support for the conclusion that there was a factual basis for the plea and that Dr. Bruno adequately understood the nature of the charges against him. The court read the information twice, and Dr. Bruno stated that he had read it before. He affirmed: "I understand the charge completely." App. 72a. The district court also discussed each of the elements of the offense. Dr. Bruno stated that he understood the elements and admitted that he committed the crime. After the prosecution discussed the evidence that would be proven at trial, he stated that he agreed with the summary of the evidence. In total, the words "intentionally misapplied" were uttered six times during the hearing. Dr. Bruno's claim that he was mistaken as to the mens rea required for a conviction is thus belied by the colloquy.

Several other factors support our decision. First, as observed by the district court, Dr. Bruno is a well-educated man with experience applying for and overseeing federal grants. United States v. Cefaratti, 221 F.3d 502, 508 (3d Cir. 2000) (noting that courts consider "factors such as the complexity of the charge, [and] the age, intelligence, and

6

education of the defendant"). Second, he was represented by and consulted with counsel. Id. (noting that courts consider whether defendant was represented as a relevant factor). At the hearing, Dr. Bruno stated that he had reviewed the information and the elements of the crime with his counsel and that his counsel had answered all of his questions. Dr. Bruno's counsel also stated that they had consulted frequently over the prior year about the matter. When Dr. Bruno was asked if he was satisfied with his counsel's performance, he answered yes. Third, Dr. Bruno discussed the charges with the Assistant United States Attorney several days before the hearing. Fourth, he cooperated with investigators for a year prior to the hearing and for two years after without questioning the charges against him or proclaiming his innocence. Cf. United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992) ("While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses."). Fifth, and most importantly, Dr. Bruno admitted to conduct establishing the contested element. Agent Blissman testified that Dr. Bruno admitted at the start of the investigation (over a year before the change of plea hearing) that the Yearound project had not been completed. Additionally, the presentence investigation report described specific acts committed by Dr. Bruno establishing that element, and he never objected. See Woodward v. United States, 426 F.2d 959, 963 (3d Cir. 1970) (relying in part on sentencing hearing and defendant's motion to reduce sentence in holding that defendant understood nature of the charge); Cefaratti, 221 F.3d at 511 (relying on pre-sentence

7

report as establishing factual basis for offense when defendant never sought to explain or withdraw admission to crime contained therein). The record amply supports the conclusion that there was a factual basis for the offense and that Dr. Bruno adequately understood the charges against him when he pleaded guilty. In sum, to the extent that there was any deficiency in the Rule 11 colloquy, it was harmless.

IV.

Dr. Bruno separately argues that the district court abused its discretion in denying his motion to withdraw his guilty plea. See Wilson, 429 F.3d at 458 (stating that denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion). In determining whether withdrawal is warranted, we primarily consider (1) whether the defendant asserts his innocence and does so with support in the record, (2) the strength of the reasons for withdrawing the plea, and (3) whether allowing withdrawal would prejudice the government. Id. We hold that the district court acted within its discretion in denying the motion.

First, as the district court noted, the evidence cited by Dr. Bruno does not show that he is innocent of intentionally misappropriating federal funds. The evidence put forward at best tends to show that Sting did some work in the Yearound community and that some residents received sporadic internet service from Sting. The evidence, however, does not show that the grant funds were used for the proper purposes. There is no indication that the work done and the service provided was in connection with the project the grant was supposed to fund, that the entirety of the project was completed, or

8

that the funds earmarked for the project were used appropriately. By contrast, in addition to his earlier guilty plea, the government put forth testimony that Dr. Bruno admitted to investigators that the work had not been completed as well as testimony and an email indicating that money was diverted from Sting to another party for work unrelated to the Yearound grant project. We agree with the district court that "[t]he Government's evidence appropriately focused on Defendant's misappropriation of the grant money—the central issue in this case—not on whether Defendant thought the project was completed." App. 50a. Accordingly, we find no fault in the district court's weighing of this factor.

Second, Dr. Bruno failed to put forward a strong reason for withdrawing his plea. His motion to the district court referred to the alleged deficiencies in the Rule 11 colloquy and his lack of notice that judgment against him would cause him to lose his pension. On appeal, Dr. Bruno relies on the first reason only.[3] As explained above, the record establishes that he had a sufficient understanding of the charges against him when

_____

[3] In support of his contention that the district court should have allowed him to withdraw his guilty plea, Dr. Bruno also appears to allege that he received ineffective assistance of counsel before pleading guilty and that the government withheld exculpatory evidence. He failed to make any arguments to the district court based on Brady v. Maryland, 373 U.S. 83 (1963), or Strickland v. Washington, 466 U.S. 668 (1984), and we decline to address them now. See Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 416 (3d Cir. 2011) (noting general rule that arguments not raised before the district court will not be considered on appeal); United States v. McLaughlin, 386 F.3d 547, 555–56 (3d Cir. 2004) (noting that ineffective-assistance-of-counsel claims "are generally not entertained on a direct appeal" because the lack of a fully developed record "precludes a comprehensive inquiry into the elements of strategy or tactics that may have entered into defense counsel's challenged decision").

9

he pleaded guilty, and the district court so found.  The fact that Dr. Bruno waited two years to request withdrawal also weighs against him.  See Doyle, 981 F.2d at 595.

Because we find no fault in the district court's weighing of the first two factors against Dr. Bruno, we need not address any potential prejudice to the government.  See United States v. Jones, 336 F.3d 245, 255 (3d Cir. 2003).  The district court did not abuse its discretion in denying the motion to withdraw his guilty plea.

V.

For the reasons set forth above, we will affirm.