**UNITED STATES of America,**

v.

**William LELAND, Defendant.**

**No. CR–03–33–B–W.**

United States District Court,
D. Maine.

April 7, 2005.

wise admitted into evidence at the sentencing hearing.

Daniel J. Perry, Office of the U.S. Attorney, District of Maine, Bangor, ME, Plaintiff.

Christopher R. Largay, Bangor, ME, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

WOODCOCK, District Judge.

On January 27, 2004, William Leland pleaded guilty to seven federal felonies. On January 19, 2005, Mr. Leland moved to withdraw his guilty pleas. Because Mr. Leland has not presented a fair and just reason for withdrawal of his guilty plea and because his motion is untimely, this

Court DENIES the Defendant's Motion to Withdraw Guilty Plea.

## I. BACKGROUND

On September 26, 2003, a Second Superseding Indictment issued, charging the Defendant William Leland with seven counts of possession with intent to distribute a variety of controlled substances, including methamphetamine, Ecstasy, marijuana, oxycodone, and cocaine, one count of possession of firearms by a convicted felon, and a forfeiture count. On January 27, 2004, Mr. Leland pleaded guilty to six of the drug trafficking crimes and to the firearms possession charge; he also consented to the forfeiture.[1] The Government agreed to dismiss Count IV, one of the drug trafficking charges, at sentencing.

### A. Pre–Guilty Plea Events: April 15, 2003—January 26, 2004

The charges against Mr. Leland were extensively and thoroughly litigated. On April 15, 2003, the Magistrate Judge ordered Mr. Leland detained pending trial (Docket No. 13). Mr. Leland unsuccessfully appealed this Order to this Court, (Docket Nos. 14, 22), and by interlocutory appeal, to the United States Court of Appeals for the First Circuit. (Docket Nos. 25, 46, 51). Mr. Leland moved for release of his vehicle (Docket No. 15), for local detention (Docket No. 18), for sanctions (Docket No. 24), to unseal the case (Docket No. 28), to suppress evidence (Docket No. 29), to disclose the identity of confidential informants (Docket No. 30), for a bill of particulars (Docket No. 42), again to suppress evidence (Docket No. 43), to sever Counts III and IV (Docket No. 44), for hearing on motion to suppress (Docket No. 54), for discovery and disclosure (Docket

---

1. This Court entered a preliminary order of forfeiture on January 29, 2004 and a final order of forfeiture on April 19, 2004. His Motion to Withdraw Guilty Plea makes no mention of the forfeiture count and at oral argument, Mr. Leland clarified that his motion was not directed to it. *Transcript of Oral Argument* at 12.

No. 55), twice for bail (Docket No. 81, 87), to appoint counsel (Docket No. 89), to dismiss (Docket No. 97), to sever and for relief from prejudicial joinder (Docket No. 98), to unseal document and view sealed response (Docket No. 133), to strike a portion of the indictment (Docket No. 135), to amend detention order (Docket No. 171), and in limine (Docket No. 197).

By Order dated November 19, 2003, the case was specially set for jury trial on January 26, 2004, for both jury selection and trial. (Docket No. 103, 107). On January 22, 2004, Mr. Leland filed a Motion to Continue Trial; the Court granted a continuance to January 29, 2004. (Docket Nos. 195, 198). On January 27, 2004, Mr. Leland entered a plea of guilty. (Docket No. 205).

### B. The Guilty Plea: January 27, 2004

At the entry of the guilty plea, the Government presented a two page document entitled Government's Version of the Offense dated January 27, 2004, setting forth at a minimum the evidence it would have presented if the case had gone to trial. (Docket No. 206). In addition, the Government and Mr. Leland presented a plea agreement signed by Mr. Leland, his counsel, and the Government's counsel, consisting of eight pages, detailing the agreements of the parties. (Docket No. 207).

### C. Post Guilty Plea Events: January 28, 2004 to Present

Following acceptance of the guilty plea, the Court ordered preparation of a Presentence Investigation Report. The Report was prepared on May 4, 2004 and revised on May 26, 2004. Following a June 14, 2004 Presentence Conference, the United States Supreme Court issued *Blakely v. Washington*, 542 U.S. 296, 124

S.Ct. 2531, 159 L.Ed.2d 403 (2004) and the Court reset a Presentence Conference for July 20, 2004 to discuss *Blakely* implications. The parties agreed the case potentially presented *Blakely* issues and ultimately decided to await clarification from the United States Supreme Court. On January 14, 2005, after *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), this Court reset the Presentence Conference for February 2, 2005 and on January 19, 2005, Mr. Leland filed the pending Motion to Withdraw Guilty Plea. The Defendant requested oral argument, which was held on March 10, 2005.

### D. The Motion

Mr. Leland's January 19, 2005 motion states five grounds for withdrawing his guilty plea and at oral argument, he added a sixth. First, he received "newly discovered evidence" that his wife, Ganessa Leland, was having an affair with one of the Government's confidential informants, conspired with the informant to put him in prison, and committed perjury at Mr. Leland's detention hearing and before the grand jury. Mr. Leland asserts his wife had the "opportunity and apparent desire to place the alleged methamphetamine in the vehicle in which the Defendant was traveling." *Def.'s Mot. to Withdraw* at 1. He contends he would not have entered the guilty plea if he had been aware of these facts and he requested a testimonial hearing to develop the factual predicate for this claim.[2]

Second, in further review of the Jencks material, provided shortly before the plea hearing, the Defendant discovered "repeated weight changes, color changes, and packing differences in the alleged methamphetamine found in the spare tire of the

---

**2.** This Court denies Mr. Leland's request for an evidentiary hearing on this issue. Even if the facts regarding Ganessa Leland are as he proposes, Mr. Leland's Motion to Withdraw Guilty Plea would be denied.

vehicle in which the Defendant was traveling." *Def.'s Mot. to Withdraw* at 2.

Third, Defendant asserts the Government seized the Defendant's camera and film and he contends these items contain exculpatory evidence. Despite numerous requests, they have never been turned over to him.

Fourth, the Defendant entered his guilty plea when the Sentencing Guidelines were mandatory; however, since the plea, the United States Supreme Court decided *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), making the Guidelines advisory and allowing the sentencing court greater flexibility in imposing sentences outside the guideline range of sentence.

Fifth, the Defendant believes the Government failed to disclose all evidence "regarding the crimes and activities" of two confidential informants.

Sixth, the Defendant contends that Pamela Paradis, a co-conspirator, later admitted she had committed perjury at Mr. Leland's April 11, 2003 detention hearing and therefore, if his case had gone to trial, he would have been able to impeach her credibility.

### E. The Government's Response

The Government responds that the Motion to Withdraw Guilty Plea is untimely, that it should be denied because Mr. Leland makes no claim of actual innocence, that the plea was pursuant to an enforceable plea agreement, and that there is no challenge to the Rule 11 itself.

## II. DISCUSSION

Rule 11(d) addresses the withdrawal of a guilty plea after the plea has been accepted, but before sentencing.

Fed.R.Crim.P. 11(d)(2)(B). The Rule provides that at this stage a defendant may withdraw a plea of guilty if "the defendant can show a fair and just reason for requesting the withdrawal."[3] *Id.* A defendant has no absolute right to withdraw a plea, *United States v. Gonzalez*, 202 F.3d 20, 23 (1st Cir.2000), and the burden of persuasion rests upon the defendant. *United States v. Castro–Gomez*, 233 F.3d 684, 687 (1st Cir.2000); *United States v. Marrero–Rivera*, 124 F.3d 342, 347 (1st Cir.1997). Whether to grant a motion for withdrawal of guilty plea rests in the sound discretion of the sentencing court and is reviewed for an abuse of discretion. *Castro–Gomez*, 233 F.3d at 686; *United States v. Ribas–Dominicci*, 50 F.3d 76, 78 (1st Cir.1995).

The First Circuit has identified five factors to assess whether the defendant's reasons justify withdrawal: 1) whether the plea was voluntary, intelligent, and knowing when made, and complied with Rule 11; 2) the force of the defendant's reason for the change of plea; 3) the timing of the request; 4) whether the defendant asserts actual innocence; and, 5) whether a plea agreement has been reached. *United States v. Padilla–Galarza*, 351 F.3d 594, 597 (1st Cir.2003); *Gonzalez*, 202 F.3d at 24; *United States v. Richardson*, 225 F.3d 46, 51 (1st Cir.2000), *cert. denied* 531 U.S. 1203, 121 S.Ct. 1216, 149 L.Ed.2d 128 (2001). Before allowing a defendant to withdraw his plea, the court must also consider the potential prejudice to the government. *Richardson*, 225 F.3d at 51; *Marrero–Rivera*, 124 F.3d at 347.

### A. The Plea: Voluntary, Intelligent, and Knowing

Whether the plea was voluntary, intelligent and knowing is the most signifi-

---

**3.** Rule 11(d), which was formerly found in Fed.R.Crim.P. 32(e), also provides the defendant may withdraw his guilty plea before sentencing if the court rejects a plea agreement under Rule 11(c)(5), a circumstance not applicable here.

cant of the five factors. *Padilla–Galarza,* 351 F.3d at 597; *Richardson,* 225 F.3d at 51; *United States v. Cotal–Crespo,* 47 F.3d 1, 3 (1st Cir.1995). To make this assessment, the courts will first review the Rule 11 hearing to determine whether the "court adequately observed the formalities imposed by Rule 11, which are intended to assure.that the defendant understands the charge and the consequences of the plea." *Padilla–Galarza,* 351 F.3d at 597.

■ Rule 11(b) sets forth the district court's obligations in advising and questioning the defendant. Fed.R.Civ.P. 11(b)(1). Here, Mr. Leland does not claim any defect with the Rule 11 hearing itself.[4] Strict compliance with Rule 11 is "quite often dispositive in determining whether a defendant has knowingly and voluntarily entered a guilty plea." *United States v. Austin,* 948 F.2d 783, 787 (1st Cir.1991). Based on Mr. Leland's concession and this Court's review of the Rule 11 colloquy, this Court concludes the formalities of Rule 11 were complied with at the hearing on January 27, 2004. This Court concludes there was an absence of coercion, Mr. Leland understood the charges, and had knowledge of the consequences of the guilty plea. *See United States v. Sahlin,* 399 F.3d 27 (1st Cir.2005); *Cotal–Crespo,* 47 F.3d at 4; *see United States v. Santiago,* 229 F.3d 313, 317 (1st Cir.2000) (quoting *United States v. Santo,* 225 F.3d 92, 99

(1st Cir.2000)); *United States v. Gose,* 260 F.Supp.2d 209, 211 (D.Me.2003).

## B. The Force of the Defendant's Reasons

■ A defendant may not renounce his guilty plea "without advancing a plausible reason for so doing." *United States v. Doyle,* 981 F.2d 591, 594 (1st Cir.1992). Plausibility, however, must "rest on more than the defendant's second thoughts about some fact or point of law, or about the wisdom of his earlier decision." *United States v. Parrilla–Tirado,* 22 F.3d 368, 371 (1st Cir.1994) (citations omitted).

### 1. Strength of the Government's Case

■ Mr. Leland initially raised four issues addressing the strength of the Government's case against him: 1) Ganessa Leland's lack of credibility; 2) discrepancies in the Jencks material's descriptions of the methamphetamine; 3) the camera and film; and, 4) the backgrounds, including the criminal histories, of the Government's confidential informants. At oral argument, he inserted a fifth issue: the credibility of Pamela Paradis, one of the Government's witnesses. *Transcript of Oral Argument* at 5–6. These contentions, however, miss the point. Mr. Leland admitted unequivocally that he was in fact guilty of each of the crimes to which he pleaded guilty.[5] He also admitted that the facts set forth in the prosecution version were true to his own personal knowledge.[6]

---

4. At oral argument, the Court asked Mr. Largay whether there is any allegation that the Rule 11 hearing itself was faulty. He responded: "not with regard to the hearing...." *Oral Argument Transcript* at 12.

5. At the Rule 11 hearing, the Court asked Mr. Leland directly: "Now, Mr. Leland, have you pled guilty to Counts 1, 2, 3, 6, 8, 10, and 14 of the second superseding indictment of this case, because you are actually guilty?" Mr.

Leland responded, "Yes." *Transcript of Rule 11 Hearing* at 4.

6. At the Rule 11, the Court asked Mr. Leland: "I'm going to ask a very important question, Mr. Leland, and I want your honest answer. Is there any respect with which you disagree with what is set forth in the Government's version of the offense dated January 27, 2004?" Mr. Leland replied: "No, sir." The Court went on: "Is the information contained in the Government's version of the offense

Having voluntarily, intelligently, and knowingly admitted he committed the crimes, Mr. Leland cannot withdraw his guilty pleas because he now believes the Government could not have proven them.

For example, Mr. Leland makes an allegation about differing descriptions in the Jencks material of the methamphetamine found in the spare tire in the trunk of his car. But, the prosecution version alleges:

A subsequent search of the spare tire located in the vehicle's trunk revealed a package containing approximately 703.5 grams of a substance containing methamphetamine.

*Prosecution Version* at 2 (Docket No. 206). Having admitted this amount of this controlled substance was in the spare tire in his trunk, it is beside the point whether the Defendant knew then or learned later he might have made inroads on cross-examination into aspects of the Government's case. The same holds true of Mr. Leland's other contentions.[7]

 It is "the policy of the law to hold litigants to their assurances." *Parrilla–Tirado*, 22 F.3d at 373. The law does not "permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *Id.* (quoting *United States v. Pellerito*, 878 F.2d 1535, 1539 (1st Cir.

1989)); *United States v. Martinez–Molina*, 64 F.3d 719, 733 (1st Cir.1995) (statements at plea hearing "carry a strong presumption of verity") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). Ordinarily, a defendant is "stuck with the representations that he himself makes in open court at the time of the plea." *Padilla–Galarza*, 351 F.3d at 598. Those representations are "more likely to be reliable than later versions prompted by second thoughts, and guilty pleas—often in the defendant's best interest—could hardly be managed any other way." *Id.*

 It is human nature for defendants to wonder what would have happened if they had put the Government to its proof and later to rue their decisions to plead guilty. But, defendants are not allowed, absent coercion or mistake, to "renege on plea agreements on the basis that they have miscalculated their risks and benefits or have belatedly discovered a new defense." *United States v. Muriel*, 111 F.3d 975, 981 (1st Cir.1997). In *United States v. Allard*, 926 F.2d 1237, 1243 (1st Cir. 1991), the First Circuit wrote:

In reaching a plea bargain, a defendant assesses the likelihood of conviction and balances that against the relative severity of the sentence he expects to receive

___

dated January 27, 2004 true to your own personal knowledge?" Mr. Leland replied: "Yes, it is." *Transcript of Rule 11 Hearing* at 17.

7. Mr. Leland's contention about the camera and film, originally a bit of a mystery, was cleared up at oral argument. Mr. Leland was returning from a trip to California, when his motor vehicle was stopped in Maine and methamphetamine was discovered in his spare tire. Apparently, when he was in California, he had a camera and took pictures. He contends these photographs would not show any evidence of drug dealing, but instead demonstrate he was in California for legitimate purposes. Mr. Leland says the

Government confiscated the camera and film and refused to turn it over. However, this is a discovery issue. Mr. Leland was clearly aware of this issue, prior to entering his guilty plea. Mr. Leland has a demonstrated ability to exercise his legal rights. If he wished to make an issue of the camera and film prior to entering the plea, he could have done so. He cannot now withdraw his plea based on his earlier strategic decision not to press the issue. Moreover, his strategic decision was facially reasonable. It is not inconceivable a person committing a crime would photographically document its perpetration, but his failure to do so would be scant evidence that he did not commit the crime.

pursuant to the agreement and that which could be imposed upon conviction. In many cases, that process results in a compromise pursuant to which the defendant makes a conscious decision to relinquish a perceived defense.... To hold otherwise would render plea agreements and the pleas entered pursuant to them meaningless.

See also *Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case...."). This Court concludes Mr. Leland has not presented a "plausible" reason for withdrawal of his guilty plea.

### 2. The *Booker* Argument

 Mr. Leland pleaded guilty before *Booker* and he claims the changes of law wrought by *Booker* should allow a withdrawal of his guilty plea. The First Circuit, however, recently made short work of a similar argument. *Sahlin*, 399 F.3d at 30–31. Although *Sahlin* addressed a defendant who had been sentenced as opposed to one awaiting sentence,[8] the First Circuit noted that the "possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea." *Id.* at 31. *Sahlin* is consistent with the longstanding principle that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady*, 397 U.S. at 757, 90 S.Ct. 1463. The First Circuit concluded Mr. Sahlin's *Booker* argument was "frivolous." *Sahlin*, 399 F.3d at 31. The pre-

*Blakely* to post-*Booker* changes in the law standing alone do not state a "fair and just reason" for allowing the withdrawal of his guilty plea.

### C. The Timing of the Motion

 In Mr. Leland's case, the Court accepted his guilty plea on January 27, 2004 and the motion to withdraw was filed on January 19, 2005, nearly twelve months later. The First Circuit noted that a "long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses." *Gonzalez*, 202 F.3d at 24 (quoting *Doyle*, 981 F.2d at 595), *see also United States v. Isom*, 85 F.3d 831, 838–39 (1st Cir.1996). It has also noted that the "longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." *United States v. Gonzalez–Vazquez*, 34 F.3d 19, 23 (1st Cir. 1994) (quoting *Parrilla–Tirado*, 22 F.3d at 373 (1st Cir.1994)).

The First Circuit has explained, however, the "relevant temporal gap" is not the time between the Rule 11 and the motion to withdraw, but rather the time between the defendant's "discovery of new information and the filing of his motion." *Gonzalez*, 202 F.3d at 24. The First Circuit has rejected plea withdrawal motions in which the relevant gap was eight months, *Id.*; six months, *see Doyle*, 981 F.2d at 595 and *Parrilla–Tirado*, 22 F.3d at 373; five months, *see United States v. Torres–Rosa*, 209 F.3d 4, 9 (1st Cir.2000); four months, *United States v. Gonzalez–Vazquez*, 34 F.3d 19, 23 (1st Cir.1994); fourteen weeks, *United States v. Marrero–Rivera*, 124 F.3d 342, 354 (1st Cir.1997); two months,

8. As *United States v. Vonn*, 535 U.S. 55, 72, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) points out, the standards for plea withdrawals before and after sentence are different: Rule 11(d)'s "fair and just reason" standard hardens into Rule 11(e)'s "near presumption" after sentencing.

*see Isom,* 85 F.3d at 839; eight weeks, *see Pellerito,* 878 F.2d at 1541, and *United States v. Crosby,* 714 F.2d 185, 192 (1st Cir.1983), *cert. denied* 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984); three weeks, *see United States v. Keefe,* 621 F.2d 17, 18 (1st Cir.1980); and, even. thirteen days, *see United States v. Ramos,* 810 F.2d 308, 313 (1st Cir.1987).

Mr. Leland's motion is untimely. It was filed nearly a year after his plea was accepted and eight months after the Presentence Report was completed. Before entering the guilty plea, Mr. Leland was aware the camera and film had not been turned over and he was in possession of the Jencks material.[9] At oral argument, Mr. Leland conceded that he was aware of the factual bases for all remaining allegations by the Presentence Conference in the summer of 2004.[10] *Transcript of Oral Argument* at 15. Although he could not have been aware of the precise contours of the *Booker* argument until the United. States Supreme Court issued *Booker,* he was aware as of. June 24, 2004, when the Supreme Court issued *Blakely,* of the issues *Booker* later resolved and could have raised them in a motion by the early summer of 2004.[11] For his own reasons, Mr.

Leland elected to wait nearly one year after entering his guilty plea and months after receiving information that he now contends justifies his withdrawal of the plea. Applying First Circuit authority, Mr. Leland's motion is untimely. *Doyle,* 981 F.2d at 595 ("While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses.").

### D. Whether the Defendant Asserts His Actual Innocence

 Among the more troubling aspects of Mr. Leland's motion is the sequencing of his assertion of actual innocence. The First Circuit has said that courts will "look more hospitably on a motion to withdraw a guilty plea when the motion is coupled with an assertion of innocence." *Doyle,* 981 F.2d at 596. On the other hand, if the Defendant does not proclaim his actual innocence, this factor "cuts sharply against allowing appellant's motion to withdraw his guilty plea." *Parrilla–Tirado,* 22 F.3d at 373; *see Doyle,* 981 F.2d at 596.

---

9. Mr. Leland contends he did not have time to thoroughly review all the information in the Jencks material before the plea. The trial was originally scheduled for jury selection for January 26, 2004. Following receipt of the Jencks material, Mr. Leland moved to continue the trial to January 29, 2004 to allow more time to review the Jencks material. This motion was granted. Mr. Leland did not move for any additional time to review the Jencks material and entered his guilty plea on January 27, 2004. If Mr. Leland needed additional time to review the material the Government had disclosed, he should have asked for it before entering his guilty plea.

10. Mr. Leland conceded he was aware of these matters by the time of the Presentence Conference. The Court misspoke at the hearing and referred to the Conference as having

taken place in September, 2004, when in fact the second Presentence Conference took place on July 27, 2004. If the July date is used, the motion was filed six months after the defendant had knowledge of the factual bases for the motion and if the September date is used, the motion was filed four months after he acquired knowledge. Using either date, the motion is untimely.

11. It seems clear Mr. Leland was waiting to see how the Supreme Court resolved *Blakely* before filing his Motion to Withdraw Guilty Plea. It cannot be coincidental that Mr. Leland decided to file his motion on January 19, 2005, one week after the Supreme Court's decision in *Booker.* As pointed out, however, post-plea changes in the law do not in any event provide a basis to withdraw a guilty plea.

Mr. Leland's written motion referred somewhat obliquely to his actual innocence to the methamphetamine count. He wrote that his wife's affair with a confidential informant had given her the "opportunity and apparent desire to place the alleged methamphetamine in the vehicle in which the defendant was traveling." *Def.'s Mot. to Withdraw* at 2. He did not, however, directly assert he was innocent of the methamphetamine count or for that matter any other count.

At oral argument, this Court directly asked whether Mr. Leland was proclaiming his actual innocence of the crimes. *Transcript of Oral Argument* at 24. Mr. Largay's initial response was that his client was asserting his actual innocence only to the methamphetamine charge.[12] *Id.* After further colloquy between the Court and Mr. Largay, Mr. Leland asked to speak with his attorney and after consultation, Mr. Largay represented to the Court that Mr. Leland is maintaining "his innocence with respect to more than that one crime." *Id.* at 30–31. Mr. Largay stated Mr. Leland is saying he did not even possess the firearm. *Id.* at 33–34.

This Court concludes Mr. Leland's maintenance of his innocence is purely opportunistic. He repeatedly admitted each crime at the Rule 11 on January 27, 2004. He reiterated in his own writing his com-

mission of the methamphetamine crime by letter to the Court dated March 11, 2004. He did not clearly assert his actual innocence in the January 19, 2005 written motion. His first assertion of actual innocence came only after the Court's inquiry on the issue and then only to the methamphetamine count. Finally, after learning the potential significance of actual innocence during the oral argument, he altered his tactics and decided to proclaim he had not committed any crimes. In the Court's view, Mr. Leland's sudden change of mind was a transparent attempt to alter the facts to fit the legal criteria. This Court does not credit Mr. Leland's oral argument epiphany that he has been actually innocent all along.

### E. Whether a Plea Agreement Was Entered Into and Breached

Mr. Leland does not dispute he entered into a plea agreement[13] and under *Gonzalez*, the signed agreement "casts further doubt on his claims." *Gonzalez*, 202 F.3d at 24. In *Ramirez–Benitez*, the First Circuit reviewed the contents of the plea agreement in tandem with the Court's inquiry at the Rule 11. *United States v. Ramirez–Benitez*, 292 F.3d 22, 28 (1st Cir. 2002). Here, the plea agreement contains not only the signature of the Government's attorney, but also the signatures of the

---

12. By letter dated March 11, 2004, Mr. Leland wrote the Court directly. In that letter, he noted that the prosecutor had asserted he had 800 grams of methamphetamine in the spare tire of the vehicle. He wrote that "someone tampered with that because I only knew of a little over 200 grams." Mr. Largay objected to the Court's consideration of this letter on the ground of attorney-client privilege. The attorney-client privilege is well-established and its rationale straightforward. *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir.2003). However, "the privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving

legal advice. When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *Id.* (citations omitted). Mr. Leland clearly waived any attorney-client privilege by writing the Court directly. There was no claim the Defendant himself did not write the letter. The Court has considered the March 11, 2004 Leland letter over his objection.

13. This plea agreement was not a package plea and does not raise the same voluntariness concerns the First Circuit addressed in *United States v. Mescual–Cruz*, 387 F.3d 1 (1st Cir.2004).

Defendant and his attorney. During the Rule 11, Mr. Leland confirmed the Defendant's signature was his, he had signed the agreement voluntarily, he had read the agreement before he signed it, he understood all its contents, and by signing it he intended to agree to all its terms and conditions.[14]

The plea agreement set forth in detail the charges to which he was pleading guilty, the maximum and minimum terms of imprisonment, and other potential penalties. It also specifically addressed in three separate places limitations on the Defendant's ability to withdraw his guilty plea: 1) it clarifies in underlined script that Mr. Leland will not be permitted to withdraw his guilty plea if the court determines mandatory minimum periods of imprisonment applied; 2) it states he will not be permitted to withdraw his guilty plea if the Government does not recommend he receive acceptance; and, 3) it confirms if the court were to reject the sentencing recommendations of the parties, he would not be thereby permitted to withdraw his guilty plea. (Docket No. 207 at 3, 4, 5). Mr. Leland makes no claim the Government has breached the terms of the plea agreement. *Transcript of Oral Argument* at 36; *compare United States v. Tilley,* 964 F.2d 66, 69–71 (1st Cir.1992). This Court concludes the plea agreement in this case "casts further doubt" on the merits of his motion. *Gonzalez,* 202 F.3d at 24.

### F. Prejudice to the Government

It is unnecessary to address the possibility of prejudice to the Government, since this factor must be weighed only if the Court concludes the defendant would otherwise be entitled to withdraw his guilty plea.

14. *Transcript of Rule 11 Hearing* at 18–19.

## III. CONCLUSION

William Leland's motion to withdraw his plea of guilty is DENIED. The Motion is untimely and the Defendant has failed to present a fair and just reason for withdrawal.

SO ORDERED.