**William LELAND**

v.

**UNITED STATES of America.**

**No. CR–03–33–B–W.**
**No. CV–07–10–B–W.**

United States District Court,
D. Maine.

July 5, 2007.

Robert M. Napolitano, Portland, ME, for Petitioner.

Margaret D. McGaughey, F. Mark Terison, U.S. Attorney's Office, District of Maine, Portland, ME, for Respondent.

### ORDER ON PLAINTIFF'S MOTION FOR RECUSAL AND ON MAGISTRATE JUDGE'S RECOMMENDED DECISION

WOODCOCK, District Judge.

On January 29, 2007, William Leland moved to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, asserting four grounds: (1) that the sentencing court erred in rejecting his motion to withdraw his guilty plea; (2) that his prior counsel gave him ineffective assistance by convincing him to plead guilty and entering into stipulations that curtailed the district judge's sentencing options; (3) that his prior counsel gave him ineffective assistance by entering into a plea agreement that waived his rights of appeal and by unreasonably delaying the filing of a motion to withdraw his guilty plea; and, (4)

that his prior counsel gave him ineffective assistance by failing to keep him informed of the status of the case and failing to act in a timely manner. *Pet.'s Mot. to Vacate, Set Aside or Correct Sentence* (Docket # 1). On April 12, 2007, the Court referred the motion to Magistrate Judge Kravchuk and on June 13, 2007, the magistrate judge issued a recommended decision. *Recommended Decision on 28 U.S.C. § 2255 Mot.* (Docket # 8) (*Rec.Dec.*). On June 20, 2007, Mr. Leland objected to the Recommended Decision and also moved to recuse this Judge from ruling on the objection. *Pet.'s Obj. to Recommended Decision 28 U.S.C. § 636(b)(1)(B)* (Docket # 10) (*Pet.'s Obj.*); *Pet.'s Mot. for Recusal* (Docket # 9) (*Mot. for Recusal*).

## I. Motion for Recusal

■ Mr. Leland moves for recusal because during sentencing, this Judge stated that he "reject[ed] emphatically any suggestion that Mr. Largay [Mr. Leland's prior counsel] was incompetent as to the Defendant's defense." *Mot. for Recusal* at 1 (quoting *Tr. of Sentencing Hr'g:* 16–17). Three of Mr. Leland's four claims are premised on Mr. Leland's contention that Mr. Largay rendered ineffective assistance of counsel and Mr. Leland argues that "[i]n light of these emphatic statements, it would be appropriate to have another Judge review the Recommended Decision and preside over any further proceedings." *Id.* at 2.

In response, the Government correctly points out that Mr. Leland's claim is "contrary to longstanding legal rule and precedent in Section 2255 cases where post-conviction petitions are routinely and appropriately referred to judges familiar with the earlier criminal proceedings." *Gov't Opp'n to the Mot. for Recusal* at 1 (Docket # 12) (*Gov't Opp'n*). In *United States v. Mala*, the First Circuit wrote

that "the trial judge, by reason of his familiarity with the case, is usually in the best position to assess both the quality of the legal representation afforded to the defendant in the district court and the impact of any shortfall in that representation." 7 F.3d 1058, 1063 (1st Cir.1993). Thus, "fact-specific claims of ineffective assistance ... must originally be presented to, and acted upon by, the trial court." *United States v. Leahy,* 473 F.3d 401, 410 (1st Cir.2007) (quoting *Mala,* 7 F.3d at 1063); *see also United States v. Leland,* 196 Fed.Appx. 9, 9 (1st Cir.2006).

Here, Mr. Leland presents a slightly different twist to the often rejected argument that the trial judge should not pass on § 2255 claims: he implies that because the trial judge previously expressed an emphatic view of the merits of the ineffective assistance issue, the judge should not review a subsequent objection based on the same argument. But, this contention, as refined, fares no better. First, the law does not prevent a judge from reconsidering a ruling; to the contrary, the law provides numerous vehicles for a judge to reconsider a prior ruling, one of them being a § 2255 petition. *See* Rule 4, Rules Governing Section 2255 Proceedings ("The clerk must promptly forward the motion *to the judge who conducted the trial and imposed sentence ....*") (emphasis added).

Second, even though Mr. Leland raised his ineffective assistance of counsel argument at sentencing, this does not preclude an effective re-argument, based on further evidence, a transcript of the controverted proceedings, a reassessment of legal authority, a recasting of the prior argument, the development of new angles on the same question, and a persuasive presentation. The First Circuit has said that even a judge's "erroneous ruling will not ordinarily be enough to warrant a writ of mandamus to the judge to recuse himself

or herself." *In re United States*, 441 F.3d 44, 67 (1st Cir.2006).

Third, the Advisory Committee's Notes reflect that the proper procedure for a movant who contends that the judge should be recused should file "an affidavit of bias." Rule 4(a), Rules Governing Section 2255 Proceedings advisory committee's note. Here, no such affidavit was filed. *See In re United States*, 441 F.3d at 65 ("A motion to recuse is a very serious matter and must have a factual foundation. . . .")

■ Finally, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Further, opinions "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* To establish a bias or prejudice springing from the facts adduced or the events occurring at trial, the movant must demonstrate bias "so extreme as to display clear inability to render fair judgment." *Id.* at 551, 114 S.Ct. 1147; *Obert v. Republic Western Ins. Co.*, 398 F.3d 138, 145 (1st Cir.2005) ("[N]either lawyers nor litigants are entitled to *tabula rasa* judges."). A judge has a "duty not to recuse himself or herself if there is no objective basis for recusal." *In re United States*, 441 F.3d at 67. If motions to recuse were granted "too easily," one concern is that the movants may use the motion strategically "to obtain a judge more to their liking." *Id.* Here, Mr. Leland has presented "no objective basis" to support his motion to recuse.

The Court denies Mr. Leland's motion to recuse.

## II. The Magistrate Judge's Recommended Decision

■ The Court also affirms the Magistrate Judge's Recommended Decision. Mr. Leland's main challenge is to the Magistrate Judge's recommendation against holding an evidentiary hearing. When he initiated his petition, Mr. Leland urged that an evidentiary hearing "is necessary to clarify what actually took place in the relationship between the petitioner and his previous attorney." *Pet.'s Reply to the Gov't Resp. to the Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255* at 1 (Docket # 7). In his objection to the Recommended Decision, Mr. Leland has focused on three specific issues that in his view justify an evidentiary hearing: (1) the timing of the motion to withdraw; (2) the failure to proceed with an appeal of the denial of the motion to withdraw; and, (3) the failure to keep petitioner informed, to take requested action, and misplaced reliance on *Booker*. *Id.* at 1–5.

In his objection, Mr. Leland concurs with the Magistrate Judge's conclusion that the "issues surrounding the withdrawal of the guilty plea have been exhaustively examined." *Pet.'s Obj. to Rec. Dec.* at 2 (Docket # 10). Mr. Leland stresses, however, that it is precisely for this reason that he seeks an evidentiary hearing; namely, to explore the underlying circumstances between his prior attorney and himself that should "drive [ ] further inquiry into the circumstances." *Id.* The problem is, however, that there is nothing in this record that would remotely suggest that such an inquiry would be fruitful. The prior denial of the motion to withdraw, and the Magistrate Judge's recommendation against this petition, accept the version of the chronology that Mr. Leland has consistently urged: that he demanded

that Mr. Largay, his prior attorney, move to withdraw his plea in June 2004, approximately six months after he entered a guilty plea, and that Mr. Largay failed to act, waiting until January 19, 2005 to move to withdraw. However, as has repeatedly been made plain, even if the motion had been filed in June 2004, it would have been too late.

Mr. Leland now argues that the magistrate judge's analysis "elides the fact that time frame for withdrawal while important, is only one of five factors." *Id.* at 4. He states: "The District Court's inquiry on the issue was driven by the case law's presumption of a valid guilty plea and did not extend into the details of the counsel's actions *vis a vis* the Defendant." *Id.* This argument seems to imply that the delay in filing a motion to withdraw guilty plea is significant not for timing, but for one or more of the remaining four factors the Court must consider in evaluating whether a guilty plea should be withdrawn. If so, it is difficult to understand how trial counsel's delay in filing a motion to withdraw a guilty plea is relevant to factors other than delay. The same is true of Mr. Leland's contention that he was not adequately kept informed by his attorney as the case progressed, that Mr. Largay failed to undertake requested actions, and that he relied too heavily on the prospect of a dramatic change in the legal landscape following *Blakely* up to *Booker.*

But, there is no factual specificity to any of these arguments. Mr. Leland nowhere suggests what an evidentiary hearing would reveal to justify the relief he has requested. If the § 2255 petitioner wishes an evidentiary hearing, he must at a minimum present a plausible basis to conclude that the evidence would lead to a different result. Here, Mr. Leland has asserted no factual basis for such a conclusion. *Cf. Owens v. United States,* 483 F.3d 48, 61

(1st Cir.2007) (holding that the district court abused its discretion in refusing to hold an evidentiary hearing, because the petitioner's allegations were not implausible, and a "final determination of the merits of [petitioner's] claim would be best served by greater development of the facts, many of which the Government disputes."). The Court concurs with the Magistrate Judge's recommendation against an evidentiary hearing, since the petitioner has failed to demonstrate that such a hearing would make a legal difference.

## III. CONCLUSION

The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determines that no further proceeding is necessary.

1. It is therefore *ORDERED* that the Recommended Decision of the Magistrate Judge (Docket # 8) is hereby *AFFIRMED.*
2. It is further *ORDERED* that the Motion to Vacate, Set Aside or Correct Sentence (Docket # 1) be and hereby is *DENIED.*
3. It is further *ORDERED* that the Motion for Recusal (Docket # 9) be and hereby is *DENIED.*

SO ORDERED.

### *RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION*

KRAVCHUK, United States Magistrate Judge.

William Leland, who is serving a 252–month sentence for federal firearms and

controlled substance offenses, has filed a petition pursuant to 28 U.S.C. § 2255 seeking to vacate the judgment of conviction entered in this court on October 31, 2005. Leland's petition, filed with the assistance of counsel who represented him at sentencing and on appeal, raises four grounds, the first, a reprise of his claim that he should have been allowed to withdraw his guilty plea, and three additional claims of ineffective assistance of trial counsel. Leland requests the court hold an evidentiary hearing because "a fact finding is necessary to sort out the exact sequence of events and decisions." (Reply Mem. at 6, Doc. No. 7). Seeing no need to hold an evidentiary hearing based upon the existing record, I now recommend the court deny the request and also deny the motion to vacate the judgment.

## Background

■ The background of this case can be found summarized in *United States v. Leland,* 370 F.Supp.2d 337 (D.Me.2005) and *United States v. Leland,* No. 05–2670, 2006 WL 2709462 (1st Cir. Sept.22, 2006). The First Circuit summarily denied Leland's direct appeal, noting that the District Court had accurately sized up the case when it issued its order denying Leland leave to withdraw his guilty plea. However, the First Circuit did note that Leland raised for the first time on appeal claims of ineffective assistance of counsel and that it would not consider such claims because they had not been raised in the District Court. Thus, the decision of the First Circuit bars further consideration of ground one of the 28 U.S.C. § 2255 motion and invites this court's close scrutiny of the other three grounds.

## Discussion

### 1. The Withdrawal of the Guilty Plea

Leland claims he should have been permitted to withdraw his guilty plea and, apparently, that his attorney should have pursued an interlocutory appeal of the District Court's denial of his motion to withdraw the guilty plea. The District Court carefully considered all of Leland's claims about why he should be allowed to withdraw his guilty plea and concluded there was no "fair and just reason for withdrawal." *Leland,* 370 F.Supp.2d at 347. There is no reason, absent ineffective assistance of counsel, to review that conclusion which has already been affirmed by the appeals court. Nor is there any reason to spill ink over the abortive attempts, both by counsel and by Leland, *pro se,* to take an interlocutory appeal of the decision denying leave to withdraw the guilty plea. The issues surrounding withdrawal of the guilty plea were ultimately fully considered on the direct appeal taken in a timely fashion after the imposition of sentence.

### 2. Counsel's failure to explain the contents of the plea agreement & to give proper advice regarding the entry of a guilty plea

■ The District Court was satisfied at the time of the Rule 11 proceeding that Leland had knowledge of the consequences of the guilty plea. *Leland,* 370 F.Supp.2d at 342. The Court also found as a fact that before he pled guilty Leland had signed the plea agreement voluntarily, had read the agreement before he signed it, had understood all its contents, and had intended, at the time he signed the agreement, to agree to all its terms and conditions. *Id.* at 347. In light of this factual finding by the Court, Leland's conclusory assertions to the contrary in ground two ring hollow. Leland does not provide any new factual assertions that were not already known to the Court by the time of sentencing hearing.

"[T]he accuracy and truth of an accused's statements at a Rule 11 proceed-

ing in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so. Stated otherwise, we hold that a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]."

*United States v. Butt,* 731 F.2d 75, 80 (1st Cir.1984) (quoting *Crawford v. United States,* 519 F.2d 347, 350 (4th Cir.1975)).

Although he complains that he only pled guilty because his attorney "convinced" him to do so, that assertion alone does not amount to a claim of ineffective assistance in the face of this Court's findings regarding the voluntariness of the guilty plea. *Butt,* 731 F.2d at 80 n. 5. ("Evidentiary hearings have been granted to § 2255 appellants who have claimed that their plea was induced by attorney misrepresentations only when the allegations were highly specific and usually accompanied by some independent corroboration."). By the time of the sentencing, Leland was represented by new counsel who attempted to raise assertions about prior counsel's performance vis-à-vis the plea agreement. Regarding the stipulations about drug quantity and trial counsel's other alleged incompetence regarding the entry of the guilty plea which apparently forms the primary basis of this ground of ineffective assistance of counsel, the following exchange between Leland and the Court occurred at the sentencing hearing:

MR. NAPOLITANO: He doesn't have to testify.

THE COURT: Mr. Leland, just so you know, I—as I've indicated, I—my impression of you is that you're a bright individual and that you follow an awful lot of this. But just so that I can limit you, because I don't want you to go on on matters that are not relevant to the Court, this is only on the issue of Christopher Largay. Your lawyer has brought a motion saying that I ought to, in effect, not enforce the stipulations that are set forth and which I've read earlier that are—that are reflected in the plea agreement because of Mr. Largay's incompetence, all right? You have something you want to tell me on that?

DEFENDANT: Yes, I do. On January 26th, about three o'clock in the afternoon, we sat out back in one of these offices out here—

THE COURT: And that—this is the date of the plea?

DEFENDANT: Yes. We had gotten 3,000 pages of *Jencks* materials, and I was in a holding cell at the Penobscot County Jail. Mr. Largay come over for approximately an hour. We didn't have time to read the *Jencks* material at all. Then we had to meet with Mr. Perry and the DEA agent named Brian Tully [phonetic].

And at that agreement the only reason I pled guilty was because Mr. Perry said that he had enough evidence to arrest my son, and if I pled guilty, he would leave my son alone. And I asked him if I could plead guilty to just the charges I—that I had actually done, and he said, no, I have to plead guilty to the whole thing. And then I said to him, "Well, how about the quantity? I don't agree with the quantity." He said, "You can argue that at sentencing." I said okay. And come to find out, I got a Presentence Investigation Report about two months after I agreed to plead guilty because Mr. Largay told me that was the best thing to do, and he had never read the *Jencks* material either. I didn't know, your Honor, I got—I got an

indictment, number one indictment, for possession with the intent to distribute and the forfeiture. I was in the Piscataquis County Jail. Three or four months later I got a second—a superseding indictment. I had no idea about those charges, what kind of evidence they had against me on those charges. And then about two months later, I got a third—another superseding indictment, a second superseding indictment. Ultimately that one, the whole third indictment, got dropped on its own because Mr. Largay never put a motion in to drop it. It got dropped on its own. On its-I don't know why. And I still don't know the counts, the evidence they had to which count, I never read the material. I was depending 100 percent on my lawyer because I was put in maximum security at state prison right after that I got the second superseding indictment. I only saw Mr. Largay three times in that time, in that time period. And it was for an hour each time. And I still right to this day I have no idea what evidence goes to what charge, who belongs to that charge. I still don't have any idea right to this day, your Honor, because I haven't had a chance to go over all of the material with my lawyer. And I was under the understanding that I could appeal. I was under the understanding that I could argue at sentencing the amount of drugs that I was being charged for because I've never been caught with any drugs in my possession at my house or in my vehicle unless I got it—that day that they got it on the initial stop. They just took the vehicle and then two days later they said they got a search warrant and that's what they found. But the stipulations that I couldn't—I couldn't argue quantity, that was never mentioned to me. Christopher Largay—that was put in paperwork against my knowledge. I didn't know that was put in there. I never read that. Mr. Largay just told me to sign it. I was rushed. This was three o'clock in the afternoon when we were having this plea agreement, and at four o'clock in the afternoon Bob Holt [phonetic] came out and told me we had better get this done now, and I asked him if we could continue it for tomorrow, and Mr. Perry said, "No, we're gonna be picking the jury tomorrow and you're gonna be going to trial, and I'm gonna charge your son with a crime." So I hurried up and pled guilty. I didn't get to read any of that paperwork. I was—I was told to sign it by my lawyer. And I was depending 100 percent on my lawyer.

(Sentencing Tr. at 24–27.)

Following Leland's statement, the Government's attorney reviewed with the court the transcript of the Rule 11 proceeding wherein Leland represented to the court that he fully understood the plea agreement and that he only signed it after reading the entire document. (*Id.* at 27–30).

Leland explained his conduct at the time of the Rule 11 as follows:

DEFENDANT: I did—I did tell you on January 27th that I read that because Christopher Largay told me to tell you. I didn't read—I didn't have time to read that. I was only in this room out back for less than an hour. And when Mr. Perry said that I was grasping at straws, you can reflect on the record that he did, in fact, arrest my son afterwards for a charge that happened two years before. So I'm not grasping at straws, I'm telling you the truth. He did say that, that he would leave my son alone, at that plea agreement. Christopher Largay will testify to that because Chris told me that. Thank you.

(*Id.* at 31).

After a pause lasting approximately five minutes, the Court ruled on Mr. Napolita-

no's motion to exclude consideration of stipulations with respect to quantity of drugs. (*See* Docket No. 327.) The basis of that motion was that trial counsel had rendered ineffective assistance when he entered into stipulations regarding drug quantity that limited the defendant's right to have an evidentiary hearing with cross-examination of the witnesses involved in quantity allegations.

The Court noted the following:

MR. NAPOLITANO: I think you've made a ruling on the motion.

THE COURT: I did make that ruling on the motion.

MR. NAPOLITANO: That ends the stipulation and the quantity argument.

THE COURT: Well, your—the—what I ruled on was your motion, which was filed on October 26th-

MR. NAPOLITANO: Right.

THE COURT:—whether or not Mr. Largay's incompetence justified an effective withdrawal of the plea. And I've ruled that the earlier—in effect, the earlier order which denied the motion to withdraw plea stands and is unaffected by the allegation that Mr. Largay was incompetent.

MR. NAPOLITANO: The motion also addressed the stipulations, too, Judge. And I think you just made a ruling on that based upon the Rule 11 transcript.

THE COURT: Well, let me—let me address that briefly. Do you want to— do you want to argue that separately?

MR. NAPOLITANO: No, that's fine, your Honor.

THE COURT: Let me be specific about that issue as well because at pretrial—at the presentence conference the question of whether the stipulations that are re-flected in the plea agreement would be enforced was raised.

(*Id.* at 35–36).

This Court can draw on its own first-hand knowledge of counsel's earlier performance during the Rule 11 proceedings in weighing the merits of this claim. *See United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993). Because Leland's written motion to vacate contains no new facts presented under oath and because of the Court's findings during the Rule 11 proceeding, the hearing on the motion to withdraw the guilty plea, and the sentencing proceedings, there is no reason for me to convene an evidentiary hearing on the question of ineffective assistance regarding the stipulations of fact in the plea agreement or trial counsel's advice regarding entry of a guilty plea. The Court has rejected the notion that Attorney Largay's performance fell below acceptable standards when he advised Leland regarding the stipulations and the entry of the guilty plea. Leland offers nothing new on that score by way of additional facts in his motion or memorandum.

### 3. Counsel's failure to file a timely motion to withdraw the guilty plea

■ Leland represents that once he realized the plea agreement locked him into a sentence without the right to appeal, he told his lawyer to file a motion to withdraw the plea. According to Leland his attorney kept putting him off and did not file the appeal until one year later. Leland notes that both the District Court and the Court of Appeals said that the lengthy time interval between the entry of the plea and the motion to withdraw was part of the rationale for denying the motion to withdraw the guilty plea. Once again the motion to vacate is not plowing entirely new ground because the sentencing court and the appeals court were both aware

that Leland alleged at the time of the motion to withdraw the guilty plea that he had told his counsel he wanted to withdraw the plea at least approximately six months prior to the date when the motion was finally filed.

The District Court explained the chronology of events from the January 27, 2004, entry of the guilty plea forward to the motion to withdraw that plea on January 15, 2005, in the following terms:

> Following acceptance of the guilty plea, the Court ordered preparation of a Presentence Investigation Report. The Report was prepared on May 4, 2004 and revised on May 26, 2004. Following a June 14, 2004 Presentence Conference, the United States Supreme Court issued *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and the Court reset a Presentence Conference for July 20, 2004 to discuss *Blakely* implications. The parties agreed the case potentially presented *Blakely* issues and ultimately decided to await clarification from the United States Supreme Court. On January 14, 2005, after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), this Court reset the Presentence Conference for February 2, 2005 and on January 19, 2005, Mr. Leland filed the pending Motion to Withdraw Guilty Plea. The Defendant requested oral argument, which was held on March 10, 2005.

*Leland,* 370 F.Supp.2d at 340.

Leland now says that he told his attorney to file the motion to withdraw his guilty plea when he realized the plea agreement meant that he had waived his right to appeal his sentence.[1] He does not offer any allegations as to when that knowledge came to him or when he first instructed his counsel to file a motion to withdraw the guilty plea on that basis. However, it appears the record conclusively establishes the earliest date to have been June, 2004.

The record provides this guidance on the issue. We can infer that by July 27, 2004,[2] Leland had definitely instructed his attorney that he wanted to file a motion to withdraw his guilty plea. (*See* Docket No. 290, Tr. Mt. Withdraw Guilty Plea, at 13–14.) Counsel made a strategic decision to "sit on" the motion until the *Booker/Fanfan* case was resolved. This court can make its own determination as to whether it would have made any difference if a motion to withdraw the guilty plea had been filed in June 2004 alleging the same grounds as the January 2005 motion and/or the additional grounds that Leland didn't understand he had waived his appeal rights regarding sentence if the sentence had been less than 210 months and his right to challenge the quantity of drugs by entering into the written stipulation. Indeed at the sentencing hearing this Court noted that Leland then contended that he had instructed his counsel to file the motion to withdraw the guilty plea in June 2004.

> THE COURT: The second allegation is that Mr. Largay failed to file a motion to withdraw the guilty plea in June 2004

---

1. The Government points out that in fact Leland's right to appeal his sentence was never waived because the trigger for his waiver of that right was if the sentence imposed was less than 210 months. Because Leland was sentenced to 252 months the waiver did not apply. (*See* Docket No. 207, Plea Agreement ¶ 6).

2. There is some stray reference to a September 2004 presentence conference, but no such conference was ever held according to the docket. Either the *post-Blakely* July 27, 2004, conference or the pre-*Blakely* June 14, 2004, conference was the occasion when counsel first mentioned that Leland would be filing a motion to withdraw the guilty plea.

when he was requested to do so by the defendant. The chronology here is that the defendant pleaded guilty on January 27, 2004. Mr. Leland states that he requested Mr. Largay to file a motion to withdraw guilty plea in June of 2004. The motion was not filed, however, until January 19, 2005. The motion was based on five separate grounds: Newly-discovered evidence, discrepancy in *Jencks* material, seizure of film and camera, the mandatory nature of the Sentencing Guidelines at the time of the entry of the plea, and a failure to disclose crimes and activities of the Government's confidential informants. The question the Court has to ask itself and answer is whether the delay from June 2004 to January 2005 made a difference. And the answer to that is no. None of the issues raised in the motion to withdraw were changed with the delay with the exception of the *Booker* opinion which actually allowed the defendant to make the mandatory sentencing guideline claim which he could not have made had the motion been made in June of 2004. The Court's opinion of April 7, 2005, addressed the timing of the motion and noted that the delay between the plea and the motion was 12 months. And the Court in its order reviewed First Circuit authority on timing issues regarding the timing of the motion. The Court found cases in which the First Circuit has rejected as too long what it's—what it terms the relevant temporal gap, where the gap was 8 months, 6 months, 5 months, 4 months, 14 weeks, 2 months, 8 weeks, 3 weeks and even 13 days. Under that analysis, the delay between January and June, a delay of approximately six months, would have been—would have not made a difference in terms of the Court's de-

termination as to whether the motion was timely.

(Sentencing Tr. at 12–13.)

Given these findings by the Court and Leland's failure to allege anywhere in his current motion that he ever instructed his attorney to file a motion to withdraw the guilty plea prior to June 2004, an evidentiary hearing is not warranted. The Court essentially credited Leland's current version that all of the delay between June 2004 and January 2005 should be attributed to his counsel's "foot dragging" and still determined that there were inadequate grounds to allow the motion to withdraw the guilty plea. Thus, even though the Government argues the delay should be attributed to Leland's own strategic decisions and Leland maintains he was held hostage by his attorney, the resolution of that factual dispute would do nothing to change the legal issue before this court regarding revisiting the motion to withdraw the guilty plea.

### 4. Counsel's failure to keep petitioner informed, take action as requested, and misplaced reliance on *Booker* changing the legal landscape

█ The fourth ground of Leland's petition appears as a catch-all ineffective assistance claim hallmarked by prior counsel's general "inattentiveness." A claim stated in such broad generalities does not meet the *Strickland v. Washington* standard for ineffective assistance of counsel. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (requiring a petitioner to establish both deficient performance and prejudice). In bringing this motion Leland has an obligation to "do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." *David v. United States,* 134 F.3d 470, 478 (1st Cir.1998). Leland's plaints give no detail at all as to specifically what

his prior counsel did or did not do, let alone suggest how Leland was possibly prejudiced by the attorney's conduct.

## Conclusion

For the reasons above I recommend that the Court **DENY** Leland 28 U.S.C. § 2255 relief.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.